**UNITED STATES of America**

v.

**Peter KRUTSCHEWSKI.**

**Crim. No. 80–135–S.**

United States District Court,
D. Massachusetts.

March 19, 1981.

Martin D. Boudreau, Sp. Atty., Dept. of Justice, Boston, Mass., for government.

Roger E. Craig, Craig, Farber & Downs, Detroit, Mich., for defendant.

## ORDER ON MOTION TO REDUCE SENTENCE UNDER RULE 35

SKINNER, District Judge.

The defendant has moved for reduction of a sentence imposed after conviction for importation and distribution of marijuana. I imposed an aggregate sentence of ten years, plus the maximum fine permitted by law, a total of $60,000.

The defendant proposes a reduced sentence:

The sentence of imprisonment to be suspended and the defendant to carry out an "alternative sentence" comprising two components.

1.  Service in the care of out-patients at mental hospitals in Lansing, Michigan.

2.  Establishment of a charitable trust for the rehabilitation of criminal defendants in the United States District Court of Western Michigan. The trust would be funded by monthly payments over a four year period in the aggregate of $1,700,000.

## 1. FINDINGS OF FACT

The evidence at the trial of this case, the subsidiary trial on the issue of criminal responsibility (post-traumatic stress or "Vietnam Syndrome"), the original disposition hearing, the presentence report, and the report of Mr. Robert Murray, a probation officer of the United States District Court for Western Michigan supports the following findings of fact:

The defendant comes from a reasonably strict middle class background. He enlisted in the Army at the time of the Vietnam War and volunteered for service as a combat helicopter pilot. He led his class in helicopter piloting. In Vietnam he piloted a combat helicopter for a full tour of duty. After brief service in Texas, the defendant volunteered for a second tour of combat duty. In all, he flew about 1,100 combat missions, and was the most highly decorated pilot in the Vietnam War.

After the war he returned to college and aircraft pilot school. He attempted for several years to secure employment as a commercial pilot.

In 1971 he became involved in smuggling marijuana by airplane across the border from Mexico into Texas. Thereafter he organized and carried out three smuggling operations by sea from South America and North Africa, and participated as an inves-

tor in one or more other smuggling ventures. Not all of these ventures were financially successful. The last smuggling venture in which he was involved occurred in the summer of 1975. This was a successful importation of 27 tons of marijuana by sea landed at Folly Cove in Gloucester. It is this importation that led to his conviction, prosecution of all of the other illegal activities having been time-barred by the time the government learned of his activities.

The defendant realized a net profit of about $500,000 from the Folly Cove smuggling venture. It is likely that he realized a return of an additional $500,000 to a million dollars from his other venture. Some of this was lost in an unsuccessful smuggling venture. After the successful venture at Folly Cove, the defendant elected to abandon his marijuana smuggling and distribution activity on the advice of his attorney.

The defendant's illegal traffic was in marijuana and hashish, a derivative of marijuana. There is no evidence that he imported or distributed any heroin or cocaine or other so-called "hard drugs".

The defendant has formed a corporation called Fairway Petroleum Corporation and successfully invested in oil exploration and development in newly discovered oil fields in Western Michigan. The initial investment in this business was derived from his smuggling proceeds.

The government did not learn of Krutschewski's illegal activity until mid-1979 and an indictment was returned in early 1980. At trial, the defendant freely admitted his illegal activity, but relied on the defense that at the time he was suffering from post traumatic stress syndrome and was unable to control his conduct. This defense was rejected by the jury.

There is no evidence of any illegal activity by the defendant from 1975 to the present. He has devoted himself to the development of Fairway Petroleum Corporation and various civic activities in Michigan.

If the motion were allowed, the defendant would be required to work six hours a day, five days a week for the Clinton-Ea-

ton-Ingham Community Mental Health Board, Lansing, Michigan. His duties would be to train de-hospitalized mental patients in self-care. The director of the agency has interviewed the defendant and finds that he possesses skills useful for this purpose. The agency's funding has been cut and it has a need for manpower. This placement has been used successfully by the probation service of the Western District of Michigan. Mr. Murray is of the opinion that this service is strenuous and demanding.

At the time of original sentencing, I received many communications in support of leniency for Mr. Krutschewski. The most astonishing was one from the psychiatrist who testified for the government on the "Vietnam Syndrome" issue:

After considerable thought, I respectfully request that in reaching an appropriate sentence that some attention be given to Mr. Krutchewski's [sic] excellent military record and his more recent civic conduct.

The Parole Examiner, U.S. Parole Commission Headquarters, Philadelphia, Pennsylvania, provided an estimate of the maximum time which the defendant would serve in prison under existing guidelines of the Parole Commission. This estimate was submitted to me with the pre-sentence report. The estimate was that, regardless of the sentence which I imposed, it was likely that the defendant would serve a maximum of thirty-six months, assuming good conduct in prison.

At the time of initial sentencing, Krutschewski's counsel requested "alternate sentencing". At that time I advised him that I would not consider any alternative sentencing that permitted Krutschewski to enjoy the benefits of his smuggling profits. I advised him that I would consider any program which included the divestment by the defendant of all property related to illegal profits and its devotion to a public purpose. I advised him that I would reserve judgment until a full public hearing in which the attorney for the government would have an opportunity to be heard.

Thereafter, I conferred with Mr. Craig, the attorney for Krutschewski, and Mr.

Boudreau, the attorney for the government. At the outset, Mr. Craig's proposal was to transfer the productive assets of Fairway Petroleum Corporation to a trust to be presently created, the trustees to be appointed under the supervision of the judges of the Western District of Michigan.

Subsequently, I was advised that the assets of the corporation were subject to layers of financing security arrangements and an attachment by the defendant's former wife. The defendant and the government have projected the figure of $1,700,000 as the likely return on the oil leases over the next four years. The proposed payments by the defendant to fund the charitable trust are based on this estimate.

## 2. GOALS OF SENTENCING

The goals of sentencing are said to be rehabilitation, deterrence of the individual defendant, general deterrence of other people from engaging in criminal activity and protection of the public. The fact that Krutschewski has stayed away from illegal activity for five years and has been involved in civic activities suggests that most of those goals have already been served. General deterrence is the remaining issue.

The effect of prison sentences on general deterrence is not clear. A recent three year study by Professor Norval Morris has led to results which the authors term "inconclusive", although it seems to me to show that there is a correlation between stiff sentencing and deterrence. Many experts feel that certainty of detection and punishment is a more significant fact than the level of punishment. The question in this case is whether imprisonment is an effective deterrence if the defendant keeps the profits of the crime. Other than imposing divestiture as a condition of probation, there is no method of getting the money away from the defendant except by the maximum fine of $60,000.

## 3. THE BASIS FOR "ALTERNATIVE DISPOSITION"

"Alternate disposition" is a relatively new concept in which public service is made a condition of probation. The theory is that imprisonment is destructive and expensive, leading to no benefit to society and eventually producing a "graduate" criminal who is more of a threat than he was before he entered prison.

It represents the most extreme case of discretionary sentencing and runs counter to another strong trend in sentencing toward uniformity through statutory guidelines or minimum mandatory sentences.

In short, the tension in sentencing is between sentencing based on the crime and sentencing oriented to the criminal.

"Alternative disposition" has been used very successfully with juveniles. Locally, Judge Kramer in the Quincy District Court has a successful program in which youthful offenders work out restitution or public service under close supervision.

Application to adults creates more problems. I have used the technique three times in seven years. The most successful application was the imposition on a medical doctor of a condition or probation that he provide a specified amount of free medical service at an understaffed public clinic. It seemed a waste to put the man in jail when so many people needed his services. Even that case illustrates one of the problems of the concept.

## 4. INEQUALITY OF APPLICATION

Discretionary sentencing is criticized because it is believed to favor defendants who are from a white, middle class background (like many judges) over the poor and members of racial minorities. Alternative disposition is often reserved for those with particular skills to offer and who do not require close supervision, which is usually unavailable. In practice this probably tends to exacerbate the discriminatory aspects of discretionary sentencing. At issue is whether the pragmatic gain to society is persuasive justification for the practice. The doctor might well have gone to jail as an example to others if he had not possessed a socially valuable skill which other people do not have.

### 5. *BUYING ONE'S WAY OUT OF PRIS-ON*

The defendant's motion in this case is opposed by the government on the ground that the defendant is buying his way out of prison, and using "tainted money".

Whenever a conditioned probation is substituted for prison, the defendant buys his way out of prison by performing the conditions. A traditional mode is restitution. The defendant has a choice: pay the money back or go to prison. The doctor had a choice: serve or go to prison.

In my view, the fact that the money is "tainted" would be the central reason for accepting the defendant's proposal. The deterrent aspect (if any) would be served by separating the defendant from his profits. I am not satisfied, however, that the four year pay-out proposed by the defendant is sufficiently secure to serve that purpose.

### 6. *ADDITIONAL PROBLEMS*

Alternative disposition has two further practical problems. One is that forms of punishment are often imposed that are not contemplated by statute or sanctioned by tradition, in the guise of a condition of probation. Conditions perceived by the judge as "creative" may be perceived by others as idiosyncratic, not to say bizarre.

The second is that the theory is not consistently applied. It is defendant-oriented, but even its proponents will reserve particular kinds of crimes from its application.

### 7. *CONCLUSIONS*

■ Despite the problems involved in "alternative disposition", by which I mean the imposition of conditions of social service on the grant of probation, it should continue to be considered as an option for sentencing judges, in my opinion. The alternative of imprisonment is expensive and almost entirely negative in social impact, except as a means of isolating dangerous criminals. It arguably has a deterrent effect, and I believe it does in certain classes of cases, but the evidence is unclear. It would be useful to continue to experiment to combine criminal disposition with some measure of social gain.

Furthermore, the alternative mode of disposition should not be restricted to juvenile cases or "minor" offenses or offenses concerning which there is minimal public concern if it is to be realistic option for a sentencing judge. The theory of orientation to the criminal rather than the crime, if valid, should be applied with some measure of consistency.

In choosing this option, the sentencing judge should carefully balance the benefits of such disposition against the disadvantages described above, after meticulous analysis of the facts in the case.

■ The application of the foregoing to the defendant Krutschewski is very troublesome. In favor of the allowance of the motion are the following strong considerations:

1. The defendant had, according to the evidence, abandoned criminal activity for a period of five years before he was indicted. He has engaged in useful work and civic activities. He would appear to have effected his own rehabilitation and not to present a current danger to society.

2. The unpaid service component of the alternative service is a critically needed service, is represented as strenuous and demanding, and would be for a longer period than the defendant is likely to serve of his nominal ten year term in prison.

3. It is desirable both as a deterrent and for the useful social purpose that could be served to recover from the defendant his "ill-gotten gains". There is no opportunity for restitution to any identifiable victim, as in the case of a theft or fraud. It should be perceived as restitution to society for what is perceived as an offense against the society at large.

The principle contrary considerations are as follows:

1. The option to set up a trust fund is not an option open to an unsuccessful smuggler who was otherwise in the same position as the defendant.

2. The amounts of money to be paid and the schedule of payments is based on projections of returns from the defendant's business. If it is low, whatever deterrent effect recovery of this money may have will be undercut. If it is high, the probation service and the court will be involved in review of the operation of the business to determine what payments ought to be made. These agencies are not suited for such an endeavor. Furthermore, the terms of a disposition of a criminal case should be certain and not speculative.

I conclude that general deterrence effect of the suggested alternative disposition is not sufficiently strong, given the level of marijuana smuggling activity along the New England coast. In particular, the long-term and partly speculative level of payments does not have the element of certainty desirable in criminal disposition.

Accordingly, the defendant's motion for reduction of sentence is DENIED.