**UNITED STATES of America, Appellant,**

v.

**MISSOURI VALLEY CONSTRUCTION COMPANY, Appellee.**

No. 83–2188.

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1984.

Decided Aug. 22, 1984.

**1544**

William F. Baxter, Asst. Atty. Gen., John J. Powers, III, Stephen F. Ross, Attys., Dept. of Justice, Washington, D.C., for appellant.

Robert B. Crosby, Donn E. Davis, Scott J. Norby of Crosby, Guenzel, Davis, Kessner & Kuester, Lincoln, Neb., and Jill Jelinek, Peter Kiewit Sons, Inc., Omaha, Neb., for appellee.

Before LAY, Chief Judge, HEANEY, BRIGHT, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG and BOWMAN, Circuit Judges. *En Banc.*

BRIGHT, Circuit Judge.

This case presents the narrow question whether a federal district court may impose on a willing corporation as a condition of probation, in lieu of a fine, the requirement that it contribute money to a charitable organization that has not suffered actual damages or loss from the corporation's criminal offense. We conclude that the district courts lack authority to impose such conditions of probation. We overrule the decision of a panel of this court in *United States v. William Anderson Co.*, 698 F.2d 911 (8th Cir.1982), insofar as it authorizes the district courts to direct a defendant, as a condition of probation, to pay money to entities that did not suffer actual damages or loss resulting from the defendant's offense.

I.

This case has a complicated procedural history. On December 23, 1981, the United States entered a preindictment plea agreement with Peter Kiewit Sons', Inc. and its subsidiary, Missouri Valley Construction Company. Under the agreement, Missouri Valley was to plead guilty to a two-count indictment alleging violations of section 1 of the Sherman Act, 15 U.S.C. § 1, arising out of Missouri Valley's alleged conspiracy with other contractors to rig bids and allocate highway construction contracts. Two corporate employees were also to plead guilty to criminal violations of the Sherman Act.[1] In return for the plea, the Government agreed not to bring any other charges against Kiewit or its subsidiaries, affiliates, or employees in connection with highway construction bid-rigging in Nebraska, Oklahoma, or Kansas. The Government also agreed to recommend that the sentencing court impose a total fine of $1,000,000 on Missouri Valley.

Pursuant to the agreement, Missouri Valley on January 14, 1982 entered a plea of guilty to the two-count indictment. On February 19, 1982, the district court sentenced Missouri Valley, rejecting the Government's recommendation of a $1,000,-000 total fine and imposing instead a fine of $1,000,000 *on each count*, the statutory maximum. On appeal, this court vacated that sentence because the district court failed to advise the defendant, before sentencing, as required by Fed.R.Crim.P. 11(e)(2), that the defendant would have no right to withdraw its guilty plea if the district court rejected the Government's sentencing recommendation. *United*

---

1. The employees' convictions are not involved in this appeal in any way.

States v. Missouri Valley Const. Co., 704 F.2d 1026 (8th Cir.1983).

Between the time the district court initially sentenced Missouri Valley and the time this court vacated the sentence and remanded the case, Missouri Valley made two motions to the district court for reduction of sentence. The first, a motion under Fed.R.Crim.P. 35 contending that the fine imposed was substantially higher than that imposed by other courts in bid-rigging cases, was denied on the ground that the circumstances of this case justified the maximum statutory penalty.

The second motion requested the district court to consider imposing an "alternative sentence" on Missouri Valley, in lieu of the $2,000,000 fine. Missouri Valley proposed that its fine be reduced to $100,000, and that, as a condition of probation, it contribute $1,400,000 to the University of Nebraska Foundation, either (1) to endow a professorship in ethics or (2) to fund the construction of an addition to the University's College of Engineering and to establish a permanent program of seminars on ethics in business and engineering. Missouri Valley explained that the Kiewit organization had a long and close association with the University of Nebraska, many of its leading figures having been educated there, and the University having received substantial contributions from Kiewit and its executives over the years. Missouri Valley also observed in its motion that the district court had recently approved "alternative sentences" for a number of other corporate defendants.

Indeed, while Missouri Valley's first appeal was still pending in this court, a panel of this court affirmed one of the "alternative sentences" the district court had imposed on other corporate bid-riggers. *See*

United States v. William Anderson Co., *supra,* 698 F.2d 911. In *Anderson,* a number of individual defendants were sentenced to perform community service work and to pay fines, part or all of which sums were to go to the community organizations for which the individuals were performing service work. A number of corporate defendants also were to pay fines, part of which would be suspended if, as a condition of probation, the defendant corporations would pay the suspended amounts to the organizations for which the individual defendants were performing community service work. The Government did not seek Supreme Court review of this court's decision approving the corporate terms of probation [2] in *Anderson.*

Some seven months after our *Anderson* decision, and three months after we vacated the initial Missouri Valley sentence, the district court resentenced Missouri Valley. The court again imposed a fine of $1,000,000 on each of the two counts. In response to Missouri Valley's "alternative sentence" motion, however, the court suspended all but $325,000 of the fine, placing the corporation on probation for five years, subject to the condition that it contribute $1,475,000 to the University of Nebraska Foundation "for the purpose of permanently endowing and supporting a chair in ethics." [3] The court stipulated that the chair not be named in any way that would identify it with Missouri Valley, its parent or subsidiary corporations, or their officers or former officers. Nor would Missouri Valley, the Kiewit corporations, or their officers or former officers participate in any way in the administration of the endowment or in the appointment of a professor to the endowed chair. The contribution was to be treated as a criminal penalty for income tax

---

**2.** Only the sentences of the corporate defendants, not those of the individual defendants, were on appeal in *Anderson.*

**3.** The court rejected Missouri Valley's new proposal, submitted after this court vacated the original sentence, under which the corporation would pay a $100,000 fine, contribute $700,000 to the University of Nebraska Foundation to

endow the professorship of ethics, and contribute $350,000 to Crime and Community, Inc., an organization concerned with promoting alternatives to incarceration, which had assisted the district court in developing a number of the alternative sentences imposed against defendants in other bid-rigging cases.

purposes.[4] In addition, Missouri· Valley and any other Kiewit corporations operating in the Grand Island, Nebraska area were to adopt a policy for detecting and reporting possible bid-rigging by their employees, and were to conduct an annual seminar on antitrust compliance, at which each of the corporations' bidding officers would be required to subscribe to a court-approved statement on corporate antitrust compliance policy.

The United States objected at the sentencing hearing to the imposition, as a condition of probation, of a payment to the University of Nebraska Foundation in lieu of a fine. The Government renews this challenge on appeal.

## II.

This appeal was originally set for submission to a three-judge panel of this court. Under Eighth Circuit practice, however, a case will be submitted to the full court en banc, on the court's own motion, without a poll of all the judges in regular active service, if a majority of the panel to which the case is initially assigned requests the full court to hear the case.

The panel to which this case was initially assigned requested that the case be heard en banc for a number of reasons. First, this court's decision in *Anderson, supra,* 698 F.2d 911, appeared to conflict with two decisions of the Tenth Circuit, *United States v. Clovis Retail Liquor Dealers Trade Association,* 540 F.2d 1389 (10th Cir.1976), and *United States v. Prescon Corp.,* 695 F.2d 1236 (10th Cir.1982). Second, the panel was aware that an appeal was pending in the Fourth Circuit from a decision of the United States District Court

for the District of Maryland, *United States v. Wright Contracting Co.,* 563 F.Supp. 213 (D.Md.1983), that relied on this circuit's *Anderson* decision.[5] Third, the panel recognized the importance of the issue at stake, in light of the growing interest in "alternative" sentencing.

Because this appeal raised the possibility that *Anderson* might be overruled, and because only the court en banc can overrule precedent established by a panel in an earlier case, the three judges to whom this case was initially assigned thought it provident to refer the case to the full court. The United States had submitted a brief to the panel attempting to distinguish this case from *Anderson,* but was granted leave, after the case was reset for argument before the court en banc, to submit a supplemental brief urging the court to overrule *Anderson.*

## III.

■ The power of the federal courts to suspend sentences and place defendants on probation arises entirely from statute; it is not inherent in the courts. *United States v. Fultz,* 482 F.2d 1, 2 (8th Cir.1973); *Ex parte United States,* 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916); *United States v. Cohen,* 617 F.2d 56, 58 (4th Cir.), *cert. denied,* 449 U.S. 845, 101 S.Ct. 130, 66 L.Ed.2d 55 (1980); *United States v. Atlantic Richfield Co.,* 465 F.2d 58, 60 (7th Cir. 1972). The probation statute, 18 U.S.C. § 3651,[6] gives the trial court wide discretion to fashion probationary conditions appropriate to each case. It provides that the trial court,

when satisfied that the ends of justice and the best interest of the public as well

---

4. Thus the contribution would not qualify as a deductible trade or business expense. *See* 26 U.S.C. § 162(f). Nor, presumably, would Missouri Valley be entitled to claim the payment as a deductible charitable contribution under 26 U.S.C. § 170.

5. After this case was set for argument before the court en banc, but before such argument was held, the Fourth Circuit reversed the district court, rejecting our *Anderson* analysis. *United States v. Wright Contracting Co.,* 728 F.2d 648 (4th Cir.1984).

6. The restitution provisions of 18 U.S.C. § 3579, enacted as part of the Victim and Witness Protection Act of 1982, Pub.L. 97–291, 96 Stat. 1253, have no relevance to this case. Section 3579 applies only to defendants convicted of offenses under Title 18 and under certain provisions of the Federal Aviation Act of 1958, not to those convicted of criminal violations of the Sherman Act.

as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.

The statute elaborates upon this general grant of discretion, however, by specifying a number of different conditions of probation that the trial court may impose. With respect to monetary payments, the statute provides that,

> While on probation and among the conditions thereof, the defendant—
>
> May be required to pay a fine in one or several sums; and
>
> May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had; and
>
> May be required to provide for the support of any persons, for whose support he is legally responsible.

Though the statute does not expressly forbid the imposition of other kinds of monetary payments than those enumerated, several considerations lead us to conclude that the enumeration should be construed as a limitation on the authority of the courts to exact monetary payments as a condition of probation.

◼ Initially, we are guided by the general principle of statutory construction, which other courts have applied to section 3651, that where a statute contains both general and specific language on a subject, the specific language governs. *See United States v. Prescon Corp., supra,* 695 F.2d at 1243; *Karrell v. United States,* 181 F.2d 981, 986–87 (9th Cir.), *cert. denied,* 340 U.S. 891, 71 S.Ct. 206, 95 L.Ed. 646 (1950). In section 3651, Congress has with notable specificty defined two permissible categories of money-payment conditions of probation, in addition to the imposition of a fine.

First, the sentencing court may require the defendant to make support payments, but only to those "for whose support he is legally responsible." Second, restitution or reparation may be required, but it is to be paid "to aggrieved parties," and it is limited to "actual damages or loss caused by the offense for which conviction was had."

The courts have, virtually without exception, construed this language narrowly. Thus it has been held that a defendant who has been accused of embezzling or converting a large sum, but who has pleaded guilty or been convicted under an indictment alleging the embezzlement or conversion of only some smaller amount, cannot be required, as a condition of probation, to make restitution of any sum greater than the amount specified in the particular counts on which conviction was had. *See United States v. Gering,* 716 F.2d 615, 622–25 (9th Cir.1983); *United States v. Orr,* 691 F.2d 431 (9th Cir.1982); *United States v. Buechler,* 557 F.2d 1002 (3rd Cir. 1977); *United States v. Follette,* 32 F.Supp. 953 (E.D.Pa.1940) (Maris, Circuit Judge, sitting by designation).[7]

◼ Likewise, where a defendant has been charged with crimes against several persons, but convicted on only some of the counts, the court may not order the defendant, as a condition of probation, to make payments to any persons who were not aggrieved by the precise acts charged in those counts on which conviction was had. *See Karrell v. United States, supra,* 181 F.2d at 987. Nor may a defendant be ordered, as a condition of probation, to reimburse the government for fees paid to his court-appointed attorney, for in such circumstances neither the government nor the attorney is an "aggrieved party" who suffered losses "caused by the offense for which conviction was had," nor does such

---

**7.** Some courts have, however, recognized an exception to the rule limiting restitution to the amount specified in the count on which conviction was had: where the defendant agrees as part of a plea bargain or civil consent judgment to pay the aggrieved party restitution in excess of the amount specified in the indictment, the defendant may be required, as a condition of probation, to fulfill the terms of the plea bargain or consent judgment to which he agreed. *See Phillips v. United States,* 679 F.2d 192 (9th Cir.1982); *United States v. Landay,* 513 F.2d 306 (5th Cir.1975).

**1548**

reimbursement amount to a "fine" within the meaning of the provisions of section 3651 authorizing monetary payments as conditions of probation. *See United States v. Turner,* 628 F.2d 461, 466–67 (5th Cir. 1980), *cert. denied,* 451 U.S. 988, 101 S.Ct. 2325, 68 L.Ed.2d 847 (1981); *United States v. Jimenez,* 600 F.2d 1172 (5th Cir.), *cert. denied,* 444 U.S. 903, 100 S.Ct. 216, 62 L.Ed.2d 140 (1979).

■ Finally, restitution or reparation to aggrieved parties may be ordered only for such amount of actual damage or loss as has been precisely ascertained by a court or by stipulation of the parties. *See United States v. Gering, supra,* 716 F.2d at 625; *United States v. Barringer,* 712 F.2d 60, 62–64 (4th Cir.1983); *United States v. Johnson,* 700 F.2d 699, 701 (11th Cir.1983); *United States v. Seest,* 631 F.2d 107, 110 (8th Cir.1980); *United States v. Roberts,* 619 F.2d 1 (7th Cir.1979); *United States v. Hoffman,* 415 F.2d 14, 21–23 (7th Cir.), *cert. denied,* 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 423 (1969); *United States v. Taylor,* 305 F.2d 183 (4th Cir.), *cert. denied,* 371 U.S. 894, 83 S.Ct. 193, 9 L.Ed.2d 126 (1962); *United States v. Stoehr,* 196 F.2d 276, 284 (3rd Cir.), *cert. denied,* 344 U.S. 826–27, 73 S.Ct. 28, 97 L.Ed. 643 (1952).

■ The strictness with which the courts have consistently applied the monetary-payment provisions of section 3651 leaves little room for the inference that those provisions do not circumscribe the broad grant of discretion contained in the first sentence of section 3651. If the statutory language on support payments and restitution were merely precatory or illustrative, many of the monetary conditions of probation disapproved by the decisions cited in the previous three paragraphs would have been permissible. The consistent strictness with which the courts have applied the provisions in question leads us to conclude that the only monetary payments permissible as conditions of probation are those expressly authorized by the statute: payments to the treasury (fines), to persons for whose support the defendant is legally responsible, or to aggrieved parties who suffered actual damages or loss caused by the offense for which conviction was had, in the amount of such damages or loss.

Both the Fourth Circuit and the Tenth Circuit have reached the same conclusion in cases closely similar to this. In *United States v. Wright Contracting Co., supra,* 728 F.2d 648, the Fourth Circuit vacated the sentences of two corporations that had pleaded guilty to highway construction contract bid-rigging in Maryland. In one instance, the district court rejected the government's proposed $200,000 fine, imposing instead a $400,000 fine, all but $50,000 of which was suspended on the condition that the defendant corporation contribute $175,000 to a jobs program sponsored by the City of Baltimore. In the other instance, the district court imposed a $40,000 fine, suspending all but $10,000 on the condition that the defendant corporation contribute an additional $10,000 to a charitable organization to be recommended by the probation department and approved by the district court. The Fourth Circuit vacated both sentences, observing that, even though the district court characterized the payments as deterrent and rehabilitative, rather than restitutional or reparative, in nature, they had the effect either of punishing the corporation or of compensating the public at large in some way for the harm the defendants had caused. As the Fourth Circuit construed section 3651, the district court was limited, when exacting monetary payments as punishment, to ordering the payment of a fine to the treasury, and when exacting monetary payments as recompense to those harmed by the defendants' crimes, to ordering payment to parties actually damaged by the offense for which conviction was had, in the legally determined amount of such damage. 728 F.2d at 652–53.

In *United States v. Clovis Retail Liquor Dealers Trade Association, supra,* 540 F.2d 1389, the Tenth Circuit reviewed the sentence imposed on a number of defendants, corporate and individual, who pleaded nolo contendere to indictments charging Sherman Act violations. The district court

sentenced each defendant to the maximum statutory fine, $50,000, but suspended the fines on condition that the defendants pay specific amounts (in most cases less than $50,000) as "community restitution" to a nonprofit organization devoted to educating the public about alcoholism. The Tenth Circuit reversed because the record did not show that the recipient organization had been aggrieved by the defendants' Sherman Act violations, or that it had suffered losses, as a result of the violations, equal to the amount it was to receive. 540 F.2d at 1390.

Finally, in *United States v. Prescon Corp., supra,* 695 F.2d 1236, the Tenth Circuit vacated the sentences imposed on two corporations that pleaded nolo contendere to charges of rigging construction bids. The district court was held to have exceeded its authority under section 3651 in suspending the defendants' fines of $252,000 and $302,000, respectively, on condition that they deposit with the court $50,000 and $75,000, respectively, to be disbursed to community agencies selected by the chief probation officer and approved by the district court. The Tenth Circuit construed section 3651 to limit the district court, in exacting monetary payments as conditions of probation, to ordering those kinds of payments specifically enumerated in the statute.[8] Payments to the court for disbursement to community agencies clearly did not, in the eyes of the Tenth Circuit, constitute restitution or reparation to aggrieved parties that had suffered actual damages or loss from the offense for which

conviction was had, in the amount of such damages or loss.

■ The payment to the University of Nebraska Foundation ordered in this case likewise meets none of the statutory criteria. In particular, the Foundation suffered no actual damage or loss from Missouri Valley's bid-rigging, nor does it appear that the amount in question—$1,475,000—is related in any way to the amount of harm caused by the defendants' offense. (Rather, the amount is related only to the amount of the fine in lieu of which it is exacted.) We conclude that the district court lacked authority under the statute to order payments to the University of Nebraska Foundation in this case.

It is of no consequence that the district court did not label the payment restitution or reparation, for if a mere disclaimer that the payments were in the nature of support, restitution, or reparation could exempt payments to third parties from the strict requirements of the statute, those statutory requirements would cease to have any force. *See United States v. Wright Contracting Co., supra,* 728 F.2d at 652. Such a result would be utterly incompatible with the strict construction that the courts have long given the provisions setting forth those requirements.

■ We note also that the effect of the monetary-payment conditions of probation in this case is to transfer to a private entity designated by the district court a substantial sum of money that would otherwise

---

8. We do not think that *United States v. Mitsubishi International Corp.,* 677 F.2d 785 (9th Cir. 1982) stands for a contrary proposition. In *Mitsubishi,* a number of corporate defendants pleaded guilty to violating railroad freight tariffs imposed under the Elkins Act. The district court imposed the statutory maximum fine, $20,000 on each count, but suspended all but $1000 (the statutory minimum) on each count on the probationary condition that each corporate defendant loan an executive for one year to the National Alliance for Business's Community Alliance Program for Ex-Offenders ("CAPE") and contribute $10,000 to CAPE for each count on which the corporation had entered a guilty plea.

On appeal, the corporate defendants contended that the terms of probation, including the loan of the executives, were unlawful because, taken together, they were more punitive than the maximum fine authorized by statute. The Ninth Circuit held that, viewed as a whole, the sentence did not impose a harsher penalty than that authorized by the Elkins Act, because if the defendants regarded compliance with the terms of probation as more burdensome than payment of the statutory maximum fine, they were free to pay the fine. The court expressly declined to consider whether the terms of probation were themselves proper. 677 F.2d at 789. *Mitsubishi* therefore does not hold that the probation statute authorizes monetary payments to nonaggrieved third parties.

likely have gone, in the form of a fine, into the federal treasury. The appropriation of federal treasury funds is ordinarily a legislative function, *see* U.S. Const., Art. I, §§ 8 and 9, and we are reluctant to hold that Congress in section 3651 delegated to the courts the power to allocate funds otherwise collectible as fines to any persons other than those expressly mentioned in the statute—that is, to aggrieved parties who have suffered actual damages or loss caused by the offense for which conviction was had, and to persons for whose support the defendant is legally responsible. The imposition of a fine for a violation of section 1 of the Sherman Act, and its suspension under 18 U.S.C. § 3651, remain discretionary with the sentencing court, but once a fine has been imposed as part of a sentence, the substitution of a payment to some other entity in lieu of the fine must satisfy the strict requirements of the monetary-payment provisions of section 3651.

Finally, some considerations of public policy lead us to conclude that the courts should not direct criminal defendants, as a condition of probation, to pay money to private entities that did not suffer damages or loss resulting from the defendants' offenses. The courts are ill-equipped to pick and choose, among countless worthy causes, which nonaggrieved charitable organizations should receive large sums of money that would otherwise be paid to the treasury as fines. In the absence of clearer authorization from Congress, we reject the concept here that the general grant of discretion in section 3651 empowers the courts to dispense largesse to nonaggrieved parties, however worthy their activities. The involvement of the courts in the selection of the recipients of such benefits raises, additionally, the prospect of conflicts of interest and unnecessary criticism of the courts.[9] *See United States v. Wright Contracting Co., supra,* 728 F.2d at 653. As

the Fourth Circuit there observed, "[t]he danger thereby created, without compensating benefit, for unnecessary involvement of the criminal justice system in peripheral controversy is obvious."

Our decision in this case does not call into question the validity of corporate probation generally, *see United States v. William Anderson Co., supra,* 698 F.2d at 914, or of the imposition as conditions of probation the requirements that individual defendants perform charitable or community service work, *see United States v. Arthur,* 602 F.2d 660, 664 (4th Cir.), *cert. denied,* 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 422 (1979), that corporate employees perform such work as part of a corporate defendant's probation, *see United States v. Mitsubishi International Corp., supra,* 677 F.2d at 787, that corporate defendants or their employees (including employees of parent or subsidiary corporations) conduct activities to educate the public, or that corporate employees (including those of parents or subsidiaries) receive instruction on compliance with the law or subscribe to a statement setting forth corporate compliance policy.

■ We vacate the sentence and remand the case to the district court for resentencing in light of this opinion. In order that the defendant not be penalized by the appeal in this case, the district court on remand shall not impose any fine or monetary conditions of probation in excess of $1,800,000, the amount for which Missouri Valley was liable under the conditions of probation from which the Government appealed. *See United States v. Clovis Retail Liquor Dealers Trade Association, supra,* 540 F.2d at 1390–91 (sentence on remand not to exceed amount defendant was to pay to nonaggrieved community organization under vacated terms of probation, notwithstanding that such amount may have been smaller than the suspended fine in lieu of

---

**9.** We emphasize that, in this case, the proposal that the defendant contribute to the University of Nebraska Foundation rather than pay the full fine originated with Missouri Valley itself. At the time of resentencing, moreover, this court's *Anderson* decision, which, as noted, the Govern-

ment did not seek to have overturned in the Supreme Court, appeared to authorize just the kind of innovative corporate probation the district court imposed in this case. *See Anderson, supra,* 698 F.2d at 913.

which it was to be paid). Subject to this limitation, the district court is free to impose whatever sentence and conditions of probation may be appropriate, including any or all of the conditions of probation previously imposed other than monetary payments to nonaggrieved third parties.

Reversed and remanded.

HEANEY, Circuit Judge, concurring and dissenting.

I concur in the result reached by the majority and join in Judge Gibson's dissenting opinion. I would go one step further and sustain payments to charitable foundations or educational institutions under the guidelines set forth below.

The present practice of punishing corporate crime with fines paid to the United States Treasury has done little to deter corporate crime. Once the payment is made to the Treasury, the public promptly forgets the transgression, and the corporation continues on its way, with its reputation only slightly tarnished by what it usually describes as a "highly technical violation." On the other hand, if a corporation is required to fund a chair in corporate ethics at a distinguished university as a condition of probation, and if the chair is identified as one funded through an involuntary contribution, there is at the very least a strong probability that there will be an improvement in corporate conduct both in the near and long term. Probation conditions similar to those imposed here are used daily for individual defendants. These conditions are generally recognized as being effective in deterring crime and bringing benefits to the communities that have been harmed by the transgression.

We err greatly in shutting the door on probationary conditions of this nature for corporate defendants. To be sure, there are potential problems. The judge must be careful to avoid any conflicts of interest and must make sure that posterity will understand that the chair was established by court order to punish illegal and unethical conduct. But we give district court judges broad discretion in scheduling and

trying cases. We are even more loath to interfere with their sentencing discretion, frequently sustaining sentences that we feel are entirely too long. Why then does the Justice Department and a majority of this Court insist on tying the hands of the district courts when it comes to imposing conditions of probation on corporate defendants, when the statutes do not require such restrictions? It seems to me that, in reality, we do so for two reasons: first, in a shortsighted effort to protect government revenues derived from criminal fines, and second, out of an inordinate fear that our district court judges will not have the wisdom to avoid possible conflicts of interest. Neither reason is sufficient for me.

JOHN R. GIBSON, Circuit Judge, with whom HEANEY, Circuit Judge, joins, concurring in the result and dissenting.

I agree with the result reached by the Court today, but I respectfully dissent from its action in overruling *United States v. William Anderson Co.*, 698 F.2d 911 (8th Cir.1982).

The Court recognizes that probation is entirely a creature of statute. The Court acknowledges the broad language of 18 U.S.C. § 3651 that a defendant may be placed on probation "upon such terms and conditions as the court deems best" and the further enumeration that "among the conditions thereof, the defendant may be required to pay a fine" and "may be required to make restitution or reparation to aggrieved parties" and "may be required to provide for support of any persons." It further clearly recognizes that the statute does not expressly forbid the imposition of other kinds of monetary payments. It then rests its conclusion on a general principle of statutory construction and several decisions from other circuits, looking primarily to the ultimate conclusions in those cases.

The Court relies on the principle, the specific language governs the general, but it is in reality invoking the maxim, *expressio unius est exclusio alterius*. The rule is essentially one of negative implication, and the Court errs in resting so significant

a decision on such insubstantial underpinning. The weakness is pointed out in R. Dickerson, *The Interpretation and Application of Statutes* 47 (1975), by the following statement: "Sometimes the maxim applies and sometimes it does not, and whether it does or does not depends largely on context."[1] The non-uniform application of *expressio unius* is illustrated forcefully in 2A *Sutherland Statutory Construction* §§ 47.23–.25 (4th ed. 1973 & Supp.1984), where, after explanation of the principle, the cases applying and the cases refusing to apply the maxim are set out in nearly equal measure.

When we look at the context of 18 U.S.C. § 3651 as Professor Dickerson suggests, and as a careful interpretation requires, with or without principles and maxims, we are met by broad and inclusive language rather than the narrow and abstemious approach taken by the Court. The court is given the broad power to place the defendant on probation "upon such terms and conditions as the court deems best." When the Court looks specifically to the language in which it finds restriction, it must grapple with an enumeration that is introduced by the inclusive phrase "among the conditions thereof" and three specific phrases, each commencing with "may be required." The inclusive word "among" is followed by three permissive phrases. To find limitation in the three phrases flies in the face of their nonrestrictive nature. It simply does not follow that the specific but permissive phrases must constrict the inclusive "among."

Because the Court's opinion today rests so substantially on a rule of construction, this discussion of the maxims *ejusdem gen-*

*eris* and *expressio unius* is of particular significance.

Some rules of statutory construction come down to us from sources that were hostile toward the legislative process itself and thought it generally wise to restrict the operation of an act to its narrowest permissible compass. However well these rules may serve at times to aid in deciphering legislative intent, they long have been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy.

*Sec. & Exch. Comm'n v. Joiner Leasing Corp.*, 320 U.S. 344, 350–51, 64 S.Ct. 120, 123, 88 L.Ed. 88 (1943) (footnotes omitted). The legislative history of 18 U.S.C. § 3651 sheds no light on the concerns raised by Mr. Justice Jackson in the above quotation. The passage of this statute in 1925 concerned itself with establishing probation for individuals and did not mention the corporate offender. When we examine the overall purposes of the statute, it is evident that a punishment that brings home to the offender the seriousness of the offense and which facilitates the personal service of an individual placed on probation, the point and purpose of the similar payments in *Anderson* are within the purview of the statute. Beyond this consideration, we are left with the context that we have examined above.

The Court's reliance on other cases citing this maxim find support in the results

---

**1.** Dickerson gives this further pointed criticism:

Several Latin maxims masquerade as rules of interpretation while doing nothing more than describing results reached by other means. The best example is probably *expressio unius est exclusio alterius,* which is a rather elaborate, mysterious sounding, and anachronistic way of describing the negative implication. Far from being a rule, it is not even lexicographically accurate, because it is simply not true, generally, that the mere express conferral of a right or privilege in one

kind of situation implies the denial of the equivalent right or privilege in other kinds. Sometimes it does and sometimes it does not, and whether it does or does not depends on the particular circumstances of context. Without contextual support, therefore, there is not even a mild presumption here. Accordingly, this maxim is at best a description, after the fact, of what the court has discovered from context.

*The Interpretation and Application of Statutes* at 234 (footnotes omitted).

alone. In *United States v. Prescon Corp.*, 695 F.2d 1236, 1242–43 (10th Cir.1982), the Tenth Circuit cites the maxim but also states: "We do not suggest that listing of the four specific conditions of probation 'closes the door' to other conditions." It cites its earlier decision, *Porth v. Templar*, 453 F.2d 330 (10th Cir.1971), that "[t]he only limitation is that the conditions have a reasonable relationship to the treatment of the accused and the protection of the public." 695 F.2d at 1242 (quoting *Porth*, 453 F.2d at 333).

Similarly, *United States v. Wright Contracting Co.*, 728 F.2d 648, 651 (4th Cir. 1984), citing its earlier decision in *United States v. Bishop*, 537 F.2d 1184 (4th Cir. 1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1105, 51 L.Ed.2d 539 (1977), also recognized that the enumeration in the statute was not exclusive. *Wright Contracting* stated that its decision was severely limited by three earlier Fourth Circuit cases, baggage which we do not carry. In *Wright Contracting* the court ultimately concluded that policy considerations impose a more restricted range of discretion when ordering payment of funds, and that ordering the payment of money to a selected charitable organization is qualitatively different from the symbolic penance exacted from individual defendants in providing cost-free personal service to such charitable organizations. 728 F.2d at 653.

This final observation of *Wright Contracting* demonstrates the weakness in the Court's opinion today as well as the inapplicability of both *Wright Contracting* and *Prescon, supra*. *Wright Contracting* and *Prescon* involved only the payment of money to charitable organizations. While our decision in *Anderson, supra*, did not make it abundantly clear, it was evident that the contributions in *Anderson* by the corporation went to the charitable projects in which its corporate officers were to perform their personal service. The district court there stated that "causing a corporation to put money into a project in which one or more of its decision makers [*i.e.*, the individual defendants] has a stake in a di-

rect interest assists the corporation's attitude."

It is significant that in this case, as in *Anderson*, no objection was raised that a condition of probation requiring individual defendants to render personal services to charitable organizations is contrary to 18 U.S.C. § 3651. Numerous cases have approved such sentences. *E.g., United States v. Arthur*, 602 F.2d 660 (4th Cir.), *cert. denied*, 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 422 (1979). The Court today gives no hint that such terms of probation are not proper as its entire focus is upon the payment of money. The reality is that the personal service to be rendered by an individual defendant may require funding. This was exactly the point recognized by the district court in *Anderson*. The *Anderson* district court opinion recognized that the penance of the individuals and the corporations in programs in which the one works and the other cannot work but can only fund may go hand in hand. The contribution of the corporation can and should be used to fund the public service activities of the individual defendants who are officers in that corporation. To conclude that such use of probation is prohibited by rules of construction based on a negative implication is simply to overlook both the purpose and broad language of section 3651.

The cases relied on by the Court today, *Wright Contracting*, *Prescon*, and *United States v. Clovis Retail Liquor Dealers Trade Ass'n*, 540 F.2d 1389 (10th Cir.1976), do not involve the same issue raised in *Anderson*, namely the use of the corporate funds to finance the public service of the individual defendants. In *Wright Contracting*, *Prescon*, and *Clovis Retail Liquor Dealers*, the payments were simply made to designated charities that had no particular tie to the case or to the conditions of probation of individual defendants. This distinction is most significant because it ties the condition of probation imposed upon the corporate defendant not only to the conditions of probation of the individual defendants, its own corporate officers, but also to the general purposes expressed in section 3651 which, as we have observed,

have not been contested with respect to the individual defendants.

As recognized in *United States v. Mitsubishi Inter. Corp.*, 677 F.2d 785 (9th Cir. 1982), the punishment of a corporation poses particular problems. A corporation cannot be sentenced to the penitentiary. The payment of money seems to be the most obvious penalty available. In *Mitsubishi, supra,* the Ninth Circuit Court of Appeals upheld the corporate defendant's conditions of probation which included loaning a company executive and contributing $90,000.00 to an ex-offender program, explaining that "probation conditions must be tailored to meet the special problems of a [corporate criminal] defendant." 677 F.2d at 788. It is the conditions of probation which present the most likely avenue for bringing about corporate changes of behavior. In addition to imposing particular procedural and structural requirements on a corporation as terms of probation,[2] the *Anderson* approach has the practical effect of tying together the probation of the individual and corporate defendants with at least as great a possibility of achieving the desired goals of probation as it is possible to reach in any case where probation is utilized.

Contrary to the point of view of the Court today, the broad discretion placed in district courts to tailor probation to the particular circumstances in each case was recognized in *Burns v. United States*, 287 U.S. 216, 220, 53 S.Ct. 154, 155, 77 L.Ed. 266 (1932). Other courts have held that the conditions enumerated in section 3651 are not exclusive but are simply "among the conditions" which may be imposed, *United States v. Vaughn*, 636 F.2d 921, 923 (4th Cir.1980); *United States v. Tonry*, 605 F.2d 144, 147 (5th Cir.1979); *United States v. Fultz*, 482 F.2d 1, 4 (8th Cir.1973); and, as explained in *Comment, Criminal Law—The Application of the Federal Probation Act to the Corporate Entity*, 3 U.Balt.L.Rev. 294, 296–97 (1974), the legislative history of the act supports the reading that it is not exclusive but provides only general guidelines.

As the Court reasoned in *Anderson* and as developed in the Yale Law Journal Comment cited above, corporations play a predominate role in our society, and their essence is far more than the legal fiction giving rise to their existence. Their management and functioning are intrinsically that of the individuals managing and controlling the organization. Insofar as the conditions of probation in *Anderson* affect the managers and decisionmakers and recognize the interrelationship between those individuals and the corporation, the *Anderson* conditions are in full accord with the purposes and goals of section 3651.

The shortcoming of the probation imposed on Missouri Valley is that it has none of the limitations recognized in *Anderson.* Specifically, there is no connection between the payment of money and programs in which individual corporate officers will be involved as a part of their probation. What we have in Missouri Valley is simply the payment of money to a designated charity, without any tie to the probation of the individuals, precisely the type of payment condemned in *Prescon* and *Wright Contracting*. It is for this limited reason that I agree that the Court has reached the right conclusion with respect to *Missouri Valley*. In doing so, however, I believe that the Court makes a great mistake in failing to distinguish the limited situation in *Anderson,* and in discarding the valuable role that it can play in corporate probation.

The sentence in *Missouri Valley* illustrates the particular abuse that is possible when a district court orders payment of funds to an entity other than the governmental institution or the party directly damaged. The record is plain that the Chairman of the Board of Peter Kiewit Sons', Inc., the corporate parent of Missouri Valley, has close ties with the University

**2.** *See Structural Crime and Institutional Rehabilitation: A New Approach to Corporate Sentencing,* 89 Yale L.J. 353 (1979).

of Nebraska. The Chairman serves on several boards or committees of the University of Nebraska Foundation. The University of Nebraska was proposed by Missouri Valley as the beneficiary of these payments. I have no difficulty in concluding that there was an abuse of discretion in allowing the corporate defendant to choose a favorite beneficiary for the receipt of these funds. The selection in this manner runs contrary to the purpose of imposing punishment on the defendant.

For these reasons I agree with the holding of the Court today. My dissent is limited to the overruling of *Anderson*.

ROSS, Circuit Judge, took no part in the consideration or decision of this case.