**UNITED STATES of America**

v.

**Victor POSNER.**

**No. 82–352–CR.**

United States District Court,
S.D. Florida,
Miami Division.

Aug. 24, 1988.

Linda Hertz, Asst. U.S. Atty., Miami, Fla., for U.S.

Edward Bennett Williams, Mary Clark, Washington, D.C., for Posner.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO VACATE

SPELLMAN, District Judge.

THIS CAUSE comes before the Court upon the Government's Fed.R.Crim.P. 35(a) Motion to Vacate Sentence. Upon careful review of all relevant memoranda and authorities, the Court is convinced that the sentence imposed upon the Defendant, Victor Posner ["Posner"], including all conditions of probation, was fully within the legislatively delegated discretion that Congress intended. The Court further notes that the Government has entirely misconstrued the conditions of probation. By arguing and briefing the legality of a charitable contribution per se as a probation condition, it has somehow missed the entire tenor of the probationary package constituting Posner's sentence.

There is an enormous and obvious distinction between requiring a probationer to make a direct monetary charitable contribution to an organization unrelated to either the probationer or his crime, and requiring a probationer to foot the bill for a charitable service project inextricably related to the probationer's crime and to which the probationer must devote substantial time without compensation. *See United States v. Danilow Pastry Co.*, 563 F.Supp. 1159, 1171 & n. 23 (S.D.N.Y.1983) ("Any community service condition can be given a monetary value. Under the government's logic any such condition arguably may be limited by the restitution section."); *see also* Note, *Charitable Contributions as a Condition of Federal Probation for Corporate Defendants: A Controversial Sanction Under New Law*, 60 NOTRE DAME L.REV. 530, 531 n. 9 (1985). Apparently, the Government has no legal difficulty with the concept of requiring Posner to perform extensive community service and to formulate a comprehensive plan to remedy one of this community's most serious plights—the homeless. *See, e.g., United States v. Arthur*, 602 F.2d 660 (4th Cir.1979). It seems then, that the Government contends that the propriety of accepting Posner's offer to "foot the bill" for this project is the single contested factor in Posner's sentence. The Court notes that this point is moot by virtue of the fact that Posner has irrevocably committed the funds knowing that the Court was considering the Government's Motion to Vacate the sentence.

The first Federal probation statute was enacted in 1925. As the Supreme Court noted,

To accomplish the purpose of the statute, *an exceptional degree of flexibility in administration is essential.* It is necessary to individualize each case, to give that careful, humane and comprehensive consideration to the particular situation of each offender which would be possible only in the exercise of a broad discretion. The provisions of the Act are adapted to this end. It authorizes courts of original

jurisdiction, when satisfied "that the ends of justice and the best interests of the public, as well as the defendant, will be subserved ... to place the defendant upon probation for such period and *upon such terms and conditions as they may deem best."*

*Burns v. United States,* 287 U.S. 216, 220–21, 53 S.Ct. 154, 155–56, 77 L.Ed. 266 (1932) (citing statute and referring to legislative history) (emphasis added).

The language relied on by the Court as affording the District Court extremely broad discretion in fashioning flexible and appropriate conditions of probation survived largely unchanged in the probation statute applicable to the Defendant, 18 U.S. C. 3651. Within the context of its extremely broad discretion, the court has a duty to tailor probation conditions to meet the individualized needs of each defendant. *See United States v. Tonry,* 605 F.2d 144, 148 (5th Cir.1979).

The Court's discretion is limited to imposing conditions "reasonably related to rehabilitation of the probationer, protection of the public against other offenses during its term, deterrence of future misconduct by the probationer or general deterrence of others, condign punishment, or some combination of these objectives." *Id.* The specifically enumerated conditions within the statute are not exhaustive, but merely illustrative. Other conditions may be imposed as long as they are "reasonably related to the rehabilitation of the probationer and protection of the public." *Id.* at 147 (citations omitted). Finally, the Court may not impose conditions that are unduly harsh when the same purposes may be achieved without so severe an impact on the probationer's rights. *See Higdon v. United States,* 627 F.2d 893 (9th Cir.1980).

The Government's entire argument rests on two premises, neither of which is well taken by this Court. First, the Government mischaracterizes Posner's probation as primarily consisting of the imposition of a $3,000,000 charitable donation not within the scope of the probation statute's permissible restitution provision, or either of the other two monetary provisions of the statute. The Government ignores the fact that the heart and soul of Posner's probation is *service,* not the incidental costs of the service project which Posner has voluntarily and irrevocably assumed. Second, the Government contends that, despite the explicit and unequivocally broad grant of discretion manifest in the statute's language (as well as in the cumulative legislative history), the enumeration of three permissible monetary probation conditions prohibits the imposition of any other condition requiring the payment of money.

1. *Posner's $3,000,000 is Merely Incidental to a Permissible Community Service Condition*

As the Court has noted, Victor Posner is a seventy-year-old man of extraordinary financial, managerial, and organizational talent who is capable of providing an immense benefit to this community. For the next five years, he will devote 20 hours per week to the formulation and implementation of a meaningful plan dedicated to alleviating the problem of the homeless in South Florida. As one of the highest paid individuals in the United States, this time commitment alone over five years is worth more than $16,000,000.[1]

The crime to which Posner plead was that of overvaluing charitable contributions so as to lessen his tax liability. Thus, despite his unfathomable wealth, Posner abused charity for his own personal gain. There is no plausible punishment more reasonably related to Posner and his crime than to have him roll up his sleeves and dedicate a substantial part of his life to furthering a vital charitable cause. Charity will no longer merely mean a tax write

---

1. Assuming that the Defendant is a workaholic, working 60 hours weekly, his hourly rate is $3,200. The Court arrived at this rate by assuming an annual income of $10,000,000 (although the record supports finding that the Defendant's yearly income is substantially higher than that) and then dividing this figure by 3,000 hours (the total annual number of hours worked based on a 60–hour work week over the course of a 50–week year, allowing for two weeks of annual vacation). The result is rounded down to a conservative $3,200 per hour rate, which when multiplied by 5,000 (20 hours per week for 5 years) yields a product of $16,000,000.

off to Victor Posner. The Court fashioned this project in the hope that Posner will learn humility, compassion, generosity, honesty, and, above all, a sense of respect for the law. No other sanction could possibly serve to better rehabilitate Posner for his misdeeds.

Further, the public nature of his sentence and his service, especially due to the extensive and continuing national publicity surrounding this case, will have a strong deterrent effect on the public, as well as on Posner. *See United States v. Missouri Valley Construction Co.*, 741 F.2d 1542, 1551 (8th Cir.1984) (overruling *United States v. William Anderson Co.*, 698 F.2d 911 (8th Cir.1982) in which the Eighth Circuit had upheld the District court's allowance of the Defendants making charitable contributions in exchange for a reduction of fines). The probation statute has always given the court the power to impose financial probationary conditions in lieu of a prison term. *See United States v. Krutschewski*, 509 F.Supp. 1186, 1191 (D.Mass. 1981).

Posner may have avoided prison, but his service obligations will be so personally demanding and time consuming, that he is by no stretch of the imagination, a "free man." He has been punished and meaningful retribution will be exacted for the five years to come. To a man of Posner's financial stature, *time* is his most valuable asset.

Posner's three million dollar contribution was in no way intended by the Court to serve as a means of circumventing the statutory limitations to restitution or imposable fines.[2] The Court was obligated to devise a sentence individually tailored to a very unique Defendant under the particular circumstances that would further the purposes of criminal law and most benefit society. In fulfilling its judicial duty, the Court envisioned a community service project of such importance and magnitude, that its fruition depended on substantial funding. Posner volunteered to foot that bill. The Court considered this gesture favorably in its finalization of Posner's sentence.

Further, the Court realized that without such funding, the project to which it had envisioned applying Posner's rare talents would be impracticable and ineffective. This was the Court's intent in accepting Posner's offer to fund the project. No one challenges the Court's authority to order Posner's service and planning contributions. Certainly, if those conditions were legitimately within the Court's discretion, so should it be within the Court's discretion to accept Posner's offer to pay the costs of implementing the community service plan. Without such authority, the Court would be unable to maximize the benefits to be derived by the community from Posner's services.

The essence of Posner's sentence was his direct and fundamental participation in the furtherance of a compelling charitable cause and his rehabilitation through education of the critical significance of the concept of charity outside the limited context of the Internal Revenue Code. Posner's irrevocably committed funds were merely an incident, albeit a necessary one, to the imposition of the sentence. As was its obligation, the Court fashioned the most meaningful sentence it could in light of the Defendant, his crimes, the policy concerns underlying punishment and probation, and the protection and benefit of society. Without Posner's voluntary monetary compliance, this sentence would not have been possible. The Government has cited no authority for the proposition that the probation statute does not permit the Court to require or, as in this case, to allow, the probationer to bear costs incident to permissible non-monetary conditions of probation.

## 2. *The Probation Statute does not Limit Monetary Conditions to Those Specifically Enumerated*

It is beyond dispute that the probation statute controlling this sentencing is 18 U.S.C. section 3651, which provides in relevant part:

---

**2.** In addition to the contribution and service requirement, the Court imposed the maximum

fine and repayment of total reimbursable costs.

*Section 3651. Suspension of sentence and probation*

Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and *place on probation for such period and upon such terms and conditions as the court deems best.*

Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, if the maximum punishment provided for such offense is more than six months, any court having jurisdiction to try offenses against the United States, when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may impose a sentence in excess of six months and provide that the defendant be confined in a jail-type institution or a treatment institution for a period of exceeding six months and that the execution of the remainder of the sentence be suspended and the defendant *placed on probation for such period and upon such terms and conditions as the court deems best.*

&ast; &ast; &ast; &ast; &ast; &ast;

The period of probation, together with any extension thereof, shall not exceed five years.

*While on probation and among the conditions thereof,* the defendant—

May be required to pay a fine in one or several sums; and

May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had; and

May be required to provide for the support of any persons, for whose support he is legally responsible.

&ast; &ast; &ast; &ast; &ast; &ast;

18 U.S.C. 3651 (emphasis added).

It is beyond question that the conditions listed in the statute were by no means intended to be exclusive, but merely illustrative of conditions to be considered by the court in fulfilling its duty to fashion a careful, flexible, individualized sentence for which the Supreme Court deemed an extraordinary degree of discretion essential. *See Burns v. United States,* 287 U.S. 216, 220–21, 53 S.Ct. 154, 155–56, 77 L.Ed. 266 (1932) (construing and explaining the significance of the first probation statute's language enabling district courts " 'to place the defendant upon probation for such period and *upon such terms and conditions as they may deem best.* ' " (emphasis added); *United States v. Tonry,* 605 F.2d 144 (5th Cir.1979) (alternative conditions may be imposed if they are reasonably related to the rehabilitation of the probationer and protection of the public) (citations omitted).

■ Some courts have held that, with respect to monetary conditions imposable, those enumerated in the statute are exclusive. This Court is of the opinion that such a reading of the statute is completely incompatible with the Supreme Court's reading of the statute, the cumulative legislative history regarding this and other probation statutes, and the purpose and language of this particular statute. Moreover, such a reading is not even suggested by the statutory language or legislative history. Rather, it is internally and inexplicably inconsistent with the explicit language of the statute as to imposable nonmonetary conditions. The suggested restrictive reading is neither required by nor in keeping with the precedent of this Circuit.

The logic asserted for reading the enumerated monetary conditions to be exclusive is weak. The most often cited basis for such a reading is the statutory doctrine of negative implication, *i.e.,* Congress listed certain monetary conditions; if it had intended other such conditions to be available, it would have so provided. *See, e.g., United States v. Missouri Valley Construction Co.,* 741 F.2d 1542, 1547 (8th Cir.1984); *but see id.* at 1551 (Gibson, J., dissenting). As Judge Gibson persuasively

notes, negative implication is an awfully weak and easily manipulable basis upon which to anchor so substantial a decision.

Here, it is particularly inappropriate as the statute is replete with language of broad discretion and inclusive, open ended language, such as, "as the Court deems best." Finally, the listing of the three permissive monetary conditions in the statute is preceded by the word "among." This word clearly implies that the monetary list was merely illustrative as was the rest of the statute. *See Id.* at 1552 (quoting *SEC v. Joiner Leasing Corp.*, 320 U.S. 344, 350–51, 64 S.Ct. 120, 123, 88 L.Ed. 88 (1943) ("courts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of the context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy."). Here, the policy is unequivocally one of maximum judicial discretion and flexibility. The imposition of community service is beyond challenge. The statute cannot reasonably be read to prohibit the requirement of payment, voluntarily or otherwise, of costs arising incident to such permissible service as a further condition of probation.

The Government relies on the concern of the Eighth Circuit in *Missouri Valley*, in justifying its prohibition of charitable conditions of probation because it might appear improper for a court to select from several worthy charitable causes, none of which was related to the probationer or his crime, which was to receive a potentially large sum of money. The "prospect of conflicts of interest and unnecessary criticism of the courts," therefore, seems to have motivated certain Circuit's overly restrictive reading of this portion of the statute. *United States v. Missouri Valley Construction Co.*, 741 F.2d 1542, 1550 (8th Cir.1984); *see United States v. Wright Contracting*, 728 F.2d 648, 653 (4th Cir. 1984).

The Court does not, however, find sufficient merit in such speculative and ever-present concerns as to require the vacating of this sentence. This sentence has been painstakingly and specifically tailored for the appropriate purposes, *i.e.*, the fundamental rehabilitation of Victor Posner, the deterrence by means of exemplification of white collar crime, and the furtherance and protection of the general public's interest. The sentence is squarely within the clear contemplation of the probation statute and the Court's judicial duties thereunder.

A final justification offered by the Government for its viewpoint is that the allowance of conditions of charitable contribution will encourage courts to divert funds that ought to enter the public treasury under the rubric of "fines," to private, charitable institutions. This, the argument contends, would amount to a usurpation of legislative fiscal power. This argument fails for the following reasons. First, as the Court noted during sentencing, the Government will receive every penny which the Court can require Posner to pay to the Government as part of the sentence.[3] The cases reversing a court's reduction of a probationer's imposed fine in exchange for his agreement to contribute a certain amount to a charitable institution have no bearing on this case. *See, e.g., U.S. v. Haile*, 795 F.2d 489 (5th Cir.1986). Therefore, the Government's reliance on this line of cases is misplaced.

This Circuit has never considered whether non-enumerated monetary conditions are imposable when necessary to effect a clearly permissible condition under the statute. *See, e.g., United States v. Mitsubishi International Corp.*, 677 F.2d 785 (9th Cir. 1982) (upholding condition of probation requiring Defendant Corporations to perform, through corporate employees, service for charitable project and to pay substantial funds in support of the project); *United States v. Danilow Pastry Co.*, 563 F.Supp. 1159 (S.D.N.Y.1983) (condition of probation that Defendant baking company bake and donate fresh goods to needy organizations); *cf. United States v. Krutschewski*, 509 F.Supp. 1186, 1190–91 (D.Mass. 1981) (the Court denied Defendant's Motion for Alternative Sentence of probation in-

---

**3.** This issue, for some reason, remains undisposed of by the parties.

cluding as conditions community service and establishment of charitable trust solely because the Defendant's future ability to fulfill the monetary conditions was speculative, thus possibly undercutting the deterrent effect of the sentence. The Court clearly, however, approved of the sentence in principle and found that it was "useful to continue to experiment to combine criminal disposition with some measure of social gain."). This Court finds these cases persuasive and closely related to the underlying purposes and policies of the probation statute.

■ The court is of the opinion that the entire statute was intended to be broadly read. *See Burns v. United States,* 287 U.S. 216, 220–221, 53 S.Ct. 154, 155–56, 77 L.Ed. 266 (1932). The statute's language gives the court extraordinarily broad authority to impose "such terms and conditions as [it] deems best." Moreover, the probation statute currently in effect mandates that a court condition probation on the performance of at least one of the following: restitution, payment of a fine, or performance of "community service as directed by the court." 18 U.S.C. 3563(a). Further, subsection (b)(20) of the statute, pertaining to additional discretionary conditions, states that a Defendant must "satisfy such other conditions as the court may impose." This language is clearly analogous to the language of section 3651 which allowed the court to impose conditions as it "deems best." *See* 1984 U.S.Code Cong. and Adm. News, p. 3276.

The extensive legislative history accompanying the probation statute which superseded section 3651, although not binding authority, is highly persuasive as to the meaning of both statutes, as well as to the overall legislative policies common to both statutes. 1984 U.S.Code Cong. and Adm. News, p. 3182. The legislature notes that it sought to protect "the flexibility that the criminal justice system requires in order to determine the appropriate sentence in a particular case in light of increased knowledge of human behavior." *Id.* at 3275. In fact, in direct contravention to the authority upon which the Government relies, Con-

gress states that the broad authority under section 3563(b)(20) would permit the imposition of restitutionary conditions not specifically enumerated under the explicit restitution provision. *Id.* at 3278–79.

Inasmuch as the legislature viewed (b)(20) to be "like current law," *id.* at 3282 —that is, equivalent of the broad "deems best" language of section 3651—it seems that a court's sentencing discretion should not be read as limited to the imposition of the three monetary conditions contained in the earlier statute. This is especially so in that the legislature specifically stated that it intended "to encourage *continued* experimentation with community service as an appropriate condition in some cases." *Id.* at 3281 (emphasis added).

Significantly, the legislature noted that the (b)(20) "wildcard" provision, "like current law," was intended to allow the court to fashion "conditions to achieve the assistance of the defendant in effectuating the goals of other listed conditions." *Id.* at 3282. The effectuation of the penal and community goals of this Court's painstakingly formulated sentence involving Posner's personal development of an extensive plan to benefit South Florida's homeless, would be unfeasible or merely nominal absent his voluntary funding of it. Therefore, it appears that Victor Posner's sentence, even if the Court had specifically *ordered* the $3,000,000 payment, would have been in keeping with the legislative intent of both section 3651 and its successor.

## CONCLUSION

Since the filing of the Government's Motion to Vacate certain events have taken place which the Court feels it would be remiss in not commenting on.

On April 4, 1988, fifty two (52) days after imposition of sentence, the Government filed its Motion to Vacate that sentence. From a period of time commencing the week following this Court's imposition of sentence, the Defendant commenced his probationary status with this Court carrying out the duties and responsibilities that had been imposed upon him. He was re-

quired to be in attendance at the Camillus House, he did so; he was required to begin the planning of the program and study contemplated by this Court's Order of February 12, 1988, he did so. It was contemplated that he would meet with the Committee appointed by this Court under the Chairmanship of the Honorable Dewey Knight, Acting County Manager (now Assistant County Manager), he did that. He was called upon to formulate a study to be conducted in the South Florida area including Palm Beach, Broward and Dade Counties, and that study is in the process of being formulated.

When the Government filed its Motion to Vacate on April 4, 1988, since it attacked the sentence imposed and demanded this Court to resentence the Defendant, this Court called an emergency hearing to inquire of Mr. Posner as to whether or not he desired to have a stay of his sentence pending further proceedings.

On April 6, 1988, the Defendant appeared with his counsel, Edward Bennett Williams,[4] before this Court. After certain matters had been presented to this Court by Mr. Williams, Mr. Posner under oath stated (Transcript of Record, docket # 307, April 6, 1988, pages 7–9):

THE COURT: State your full name, please.

MR. POSNER: Victor Posner.

THE COURT: You are the defendant in this case?

MR. POSNER: Yes, I am.

THE COURT: You have heard Mr. Williams indicate to this Court that: Number one, you do not desire that this Court stay the sentence which was imposed by the Court regardless of the motion which has been filed by the United States Attorney, and that, in fact, you are prepared fully to proceed to meet the commitment that you indicated in open Court you desired to do at the time of your sentencing on February the 12th of this year. Is that a correct statement?

MR. POSNER: Yes, your Honor.

4. This occasion was the last appearance of Mr. Williams in a court of law. He was summoned from this life on August 13, 1988. Edward

THE COURT: This Court is of the view from the standpoint of the matter that if you do not desire that this Court stay the sentence, that the sentence will proceed.

I have conferred with the probation office, Mr. (Jim) Lyons and Mr. Frank Schwartz, who have been, by the way, very satisfied with your conduct and the manner in which you conducted yourself in regard to this matter, and they have indicated a willingness to have the matter proceed accordingly if that was your desire. I wanted that affirmed from the standpoint and wanted to know what, in fact, your view was, although no motion had been filed one way or another with regard to it.

Insofar as your decision with regard to making a full commitment of the money that was discussed in open Court, my feeling and view is that at this point in time, you have to be treating and considering that as a voluntary act on your part, because certainly you have the right, based on the motion that has been filed in this case by the Government of the United States to say, well, if I have my druthers, I will hold off, awaiting the outcome of the motion.

If, however, on the other hand, you decide to follow through on your voluntary compliance, because at this point in time, it must be looked upon as voluntary on your part—

\* \* \* \* \* \*

THE COURT: —you brought Barry University to assist you in the preparation of the study, my understanding is that they have engaged or brought in the University of Miami, Florida Atlantic University, and Florida International University at your discretion, and that the money and the financial commitment be lodged with Barry University with the understanding that it be deposited accordingly.

MR. POSNER: Yes, sir.

Bennett Williams brought to this Court wit, wisdom, charm and the warmth of his presence. He will be missed.

Since the imposition of this Court's sentence on February 12, 1988 up to the present time, according to the Probation Department, the Defendant has fully complied with the conditions of his probation to their satisfaction. This included, consistent with his announcement of April 6, the voluntary placing of the sum of Three Million Dollars ($3,000,000) in an interest-bearing non-taxable account under the control of Barry University subject to the implementation of the study contemplated by this Court in its original sentence and any project or projects that might thereafter be forthcoming.

He has appeared before the Advisory Committee appointed by this Court on more than several occasions and a determination is about to be made by way of a recommendation to this Court of what the future course of action is to be taken regarding the study of the homeless.

The Court considers the Defendant's conduct and his voluntary compliance significant in two respects. First, it sets to rest forever the Government's concern that somehow Mr. Posner might successfully avoid the self-imposed financial obligation. Secondly, it clearly reflects the voluntary nature of the commitment on the part of the Defendant.

It is the Court's opinion that the Government's Motion should be denied.

Based upon the above and foregoing, it is

ORDERED AND ADJUDGED that the Motion to Vacate be and the same is hereby DENIED.