UNITED STATES of America, Appellant,

v.

**WRIGHT CONTRACTING COMPANY,** Appellee.

UNITED STATES of America, Appellant,

v.

**MID-ATLANTIC PAVING COMPANY, INC.,** Appellee.

Nos. 83–5125, 83–5179.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 3, 1983.

Decided Feb. 28, 1984.

---

Edward T. Hand, Dept. of Justice, Washington, D.C. (Warren Marcus, Richard A. Small, Dept. of Justice, Philadelphia, Pa., William F. Baxter, Asst. Atty. Gen., John J. Powers, III, Dept. of Justice, Washington, D.C., on brief), for appellant.

Leslie A. Vial, Baltimore, Md. (Benjamin R. Civiletti, Washington, D.C., Thomas S. Martin, Venable, Baetjer & Howard, Baltimore, Md., on brief), and James N. Phillips, Baltimore, Md. (Phillips & Sloan, P.A., Baltimore, Md., on brief), for appellees.

Before WINTER, Chief Judge, and PHILLIPS, and ERVIN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

This appeal arises from separate federal prosecutions for illegal price-fixing and bid-rigging in violation of section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. In separate actions, the district court sentenced two corporate criminal defendants, Wright Contracting Company and Mid-Atlantic Paving Company, Inc., to pay fines to the U.S. Government. The court then suspended execution of substantial portions of the sentences and placed the defendants on probation conditioned upon each defendant's contributing a specific amount of money to private charitable organizations. The Government appealed, challenging the legality of the sentences imposed, and we consolidated the appeals.

On appeal, we conclude that the judgments are appealable under the Criminal Appeals Act, 18 U.S.C. § 3731, and that in each case the district court exceeded its statutory powers by imposing as a condition of probation the payment of a sum of money unrelated to any legally determined loss sustained, to an entity not aggrieved by the offense. We therefore reverse and remand for imposition of proper sentences.

I

The facts of the cases are not disputed. Wright Contracting Company (Wright), a highway construction company doing business in nine eastern states and the District of Columbia, pleaded guilty to one count of price-fixing in violation of section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, in March of 1983. The illegal activity occurred in connection with the 1979 bid-rigging of a federal highway project in Maryland. Wright entered a plea agreement with the Government agreeing to pay a fine of $200,000 to the United States. In the event the district court rejected the plea agreement, the Government agreed to recommend a fine of $200,000.

The district court rejected the plea agreement, but accepted Wright's guilty plea. Instead of the recommended fine of $200,-000, Wright was sentenced to pay a fine of

$400,000. Execution of the sentence was suspended except for $50,000, with Wright being placed on probation for three years on the condition that it contribute $175,000 to the Baltimore City Foundation, Inc., Blue Chip-In-Program, a jobs program sponsored by the city of Baltimore. Characterizing the condition imposed on probation as a "program of Corporate Penance" serving the purpose of "deterrence and rehabilitation," the court stated that the program

> is not restitutional, reparative, or in any way connected with reimbursing anyone for losses sustained as a result of this specific crime. It is instead designed to punish defendant, specifically deter defendant, and generally deter other corporations contemplating similar criminal activity.

*United States v. Wright Contracting Co.,* 563 F.Supp. 213, 214 (1983).

Mid-Atlantic Paving Company, Inc. (Mid-Atlantic), a company producing liquid bituminous material for use in the construction, repair, and resurfacing of public highways in Maryland and Delaware, pleaded guilty to participation in a conspiracy to allocate and rig bids on contracts for liquid bituminous material purchased by the states of Maryland and Delaware and various Maryland counties in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. Mid-Atlantic, in a plea agreement with the Government, agreed to pay a fine of $40,000. The Government agreed to recommend a fine of $40,000 should the district court reject the plea agreement.

Consistent with the course of events in *Wright Contracting,* the district court declined to accept the plea agreement, but did accept the guilty plea entered by Mid-Atlantic with the consent of the Government. Mid-Atlantic was sentenced to pay a fine of $40,000. Execution of the sentence was then suspended except for $10,000, with Mid-Atlantic being placed on probation for two years on the condition that Mid-Atlantic pay $10,000 to a charitable organization located in Howard or Anne Arundel County, Maryland. The charity was to be recommended by the probation department

and approved by the district court. Following the reasoning of the opinion in *Wright Contracting,* 563 F.Supp. 213, the court asserted in *Mid-Atlantic* that the charitable contribution would "put back into the immediate local community some of the illegal gains which have been achieved by the corporation from that community, and it would serve as a deterrent as well as a corporate catharsis to help to expiate its corporate guilt." Transcript of sentencing hearing at 23. The Government appeals from the judgments imposing as conditions of probation the payment of sums of money to charitable institutions.

## II

■ At the outset we confront the question of whether the judgments entered by the district court are appealable by the government. We hold that they are appealable under the Criminal Appeals Act, 18 U.S.C. § 3731. As interpreted by the Supreme Court, that Act removed all statutory barriers to government appeals, and permits appeals from any judgment whose reversal or vacation will not result in a new trial violative of double jeopardy rights. *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *see United States v. Martin Linen Supply Co.,* 430 U.S. 564, 568, 97 S.Ct. 1349, 1352, 51 L.Ed.2d 642 (1977).

Because these appeals do not trigger double jeopardy concerns, we have jurisdiction to entertain them.

## III

On the merits, the Government contends that the Probation Act, 18 U.S.C. § 3651, does not authorize a district court to impose as a condition of probation the payment of money to a person or group not aggrieved by the offense, in amounts unrelated to actual losses caused by commission of the criminal offense.

The power to suspend sentences and impose probationary conditions, and the limits of that power, are found in the Federal Probation Act, 18 U.S.C. § 3651. In pertinent part, that Act provides:

Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.

. . . . .

While on probation and among the conditions thereof, the defendant—

May be required to pay a fine in one or several sums; and

May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had; and

May be required to provide for the support of any persons, for whose support he is legally responsible.

Whether the probationary conditions here imposed are legal turns on interpretation of what is concededly an ambiguous element in this statute. The specific interpretive problem is revealed in the parties' opposing contentions.

The defendants, seeking to uphold legality, rely upon the general language implying great discretionary latitude that is found in the first paragraph of the quoted portions of the statute. Specifically they urge that the language "may . . . place . . . on probation for such period and upon such terms and conditions as the court deems best," suggests latitude limited only by general abuse of discretion constraints. Here, they say, there is no abuse of discretion: the conditions' stated purpose, to deter and to punish, lie well within traditional bounds of sentencing discretion.

The government, on the other hand, points to the more specific limitations explicit and implicit in the later enumerated conditions involving the payment of sums of money—as fines, as restitution or reparation, or as legally obligated support. When the payment of money is ordered as a condition of probation and the manifest purpose of the condition falls within any of the specified categories, says the government, then it is subject to any limitations expressed in the statutory authorization. Here, the argument runs, the condition imposed manifestly has essentially a restitutive or reparative purpose, albeit an avowedly "symbolic" one designed to deter and punish as well. Since the payment is not ordered to "aggrieved parties" and does not purport to reflect "actual damages or loss caused by the offense," it does not meet the statutory limitations and is illegal in the government's view.

As the district court and the parties rightly recognize, this court has not directly addressed the precise issue presented. But we have come very close, and our decisions in several other cases give some guidance.

In *United States v. Bishop,* 537 F.2d 1184 (4th Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1105, 51 L.Ed.2d 539 (1977), we held the obvious, that by its very terms the statute does not purport to make the specific examples of permissible conditions—fines, restitution or reparation, and support—an exclusive listing. On that basis we upheld a condition restricting a convicted defendant's gambling and related activities. Notably, no payment of money was involved.

In *United States v. Arthur,* 602 F.2d 660 (4th Cir.), *cert. denied,* 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 422 (1979), we gave a broad reading to the statute in a decision which furnishes the strongest direct precedential support for the defendants' position here. In *Arthur* we upheld the district court's imposition of a condition of probation for a convicted "white-collar" defendant, that the probationer accept full-time employment without salary in a charitable organization. As a general matter, we said, the statute's broad introductory grant of discretion should be considered limited only by the requirement that any condition imposed bear "a reasonable relationship to the treatment of the accused and the protection of the public." *Id.* at 664. This require-

ment was met, we thought, by considering the condition in question an acceptable deterrent and a "symbolic form of restitution to the public for having breached the criminal laws." *Id.* Notably again, the condition did not involve the payment of money.

In *United States v. Taylor,* 305 F.2d 183 (4th Cir.1962); *United States v. Vaughn,* 636 F.2d 921 (4th Cir.1980); and, most recently, in *United States v. McMichael,* 699 F.2d 193 (4th Cir.1983), we have considered three conditions of probation involving the payment of money, all avowedly or manifestly for restitutive or reparative purposes. In each we have insisted that where a condition falls within that category, it must meet the special requirements provided for the category, notwithstanding the general introductory grant of broad judicial discretion.

In *Taylor,* we held that a defendant convicted of tax evasion might be subjected to a probationary condition of making restitution to the government, as the "aggrieved party," of all taxes legally determined to be due and collectible, on the basis that these were "actual damages or loss caused by the offense."

In *Vaughn,* we held that this rule did not permit the imposition of a condition of probation requiring a convicted tax evader to reimburse the government for its itemized expenses of investigating the offense. Investigation expenses, we said, were too remote a consequence of the "offense" to be considered "actual damages or loss caused by" it. While the specific categories of conditions authorized by the statute were not meant to be exclusive, the "reimbursement" ordered fell manifestly within the restitutive category, hence was subject to its limitations.

Finally, and most recently, in *McMichael* we again applied the *Taylor/Vaughn* rule to find appropriate the imposition of a condition that a convicted embezzler make restitution of all sums legally determined to be due the private party victims. Again, we insisted that restitution as a condition of probation must be limited to "actual damages or loss caused," as that amount might

be legally determined in the total criminal proceeding, but found that test met on the facts of the case.

None of these decisions, as indicated, considered the legality of a condition such as that imposed here: the payment of a sum of money, not legally determined to reflect "actual damages or loss" to a private entity not conceivably a party "aggrieved" by the offense. Unbound by any direct precedent in this circuit, the district court relied, as persuasive authority, upon the Eighth Circuit's decision in *United States v. William Anderson Co.,* 698 F.2d 911 (8th Cir.1982), which upheld a comparable condition. Undoubtedly mindful of the difficulty posed for that view by our "restitutive/reparational" limitation decisions in *Taylor, Vaughn,* and *McMichael,* the district court expressly disavowed any restitutive or reparative purpose for the condition and asserted instead a purpose to punish, to deter, and to rehabilitate through the imposed acts of "corporate penance."

■ With all respect for the Eighth Circuit's view and for the district court's understandable effort here to engage in creative sentencing tailored to the special circumstances of "white-collar" corporate defendants guilty of economic depredations against the general public, we cannot uphold the conditions imposed. In the first place, we think that our decisions in *Taylor, Vaughn,* and *McMichael,* while not directly on point, effectively preclude their imposition.

The district court's disavowal of any reparative or restitutive purpose, presumably made to avoid clash with those decisions, cannot control. If it could, the limitations wisely imposed by the statute upon restitution or reparation as legitimate conditions of probation could always be subverted by a disclaimer. As we did in *Vaughn,* where the stated purpose was said to be "reimbursement," we must look to the reality that the payment here is reparative or restitutive if it is anything other than purely

punitive in purpose.[1] If it is purely punitive, the proper vehicle for punishment by the exaction of money is the fine payable to government—an authorized condition under the statute. The payments ordered here obviously do not qualify in that category and are not so asserted.

Considering the conditions imposed here as, therefore, restitutive or reparative in essential purpose, they do not meet the requirements of the statute as we have applied it in *Taylor, Vaughn* and *McMichael.*

The sums involved do not purport to be, and could not be found to be, legally determined amounts of "actual damages or loss caused by the offense" for which defendants were convicted. And the authorized recipients of the payments are obviously not aggrieved parties within contemplation of the statute.

Were the interpretive question a completely open one—unguided by our decisions in *Taylor, Vaughn,* and *McMichael*—we would, in any event, be persuaded to adopt the reasoning of the Tenth Circuit in *United States v. Prescon Corp.,* 695 F.2d 1236 (10th Cir.1982), leading to the same result we reach here, as opposed to the contrary view adopted by the Eighth Circuit in *Anderson.* As did the Tenth Circuit, we think that policy considerations support a construction of the statute that imposes a more restricted range of discretion upon sentencing judges when ordering the payment of funds (other than fines) as conditions of probation than when imposing other conditions. Creative sentencing of the kind here

undertaken, for example, necessarily involves the court in selecting particular third persons to become beneficiaries of the probationer's assets—presumably acting in some way as "surrogates" for the public as the actually "aggrieved party." Such selections of course carry financial benefits for which there may be quite legitimate rival claimants among potential "surrogates," whether known or unknown to the court. Where the sums imposed for payment are also fixed by the court without reference to any measurable losses or damage, the court exposes itself to possibly justifiable and unanswerable criticisms both in respect of the particular beneficiaries selected and the specific sums awarded them. The danger thereby created, without compensating benefit, for unnecessary involvement of the criminal justice system in peripheral controversy is obvious. This very danger may have informed Congress's decision, when enacting 18 U.S.C. § 3651, to impose specific limitations on all those conditions of probation that involve the payment of funds by convicted defendants.

On this basis, we think that the "symbolic restitution" of providing cost-free personal service to a charitable organization that we upheld as a condition of an individual defendant's probation in *Arthur* is qualitatively different from the symbolic "penance" exacted from the corporate defendants here in the form of substantial payments of money to selected charitable organizations. If *Arthur* requires distinguishing, this serves to do so for us.[2]

---

1. Indeed, the court's specific disavowal of any restitutive or reparative purpose was accompanied by an assertion in the *Mid-Atlantic* case that the charitable contribution would "put back into the immediate local community some of the illegal gains ... achieved by the [corporate probationer]," manifestly a restitutive purpose.

2. By this decision we do not hold that under no circumstances may avowedly restitutive or reparative payments be ordered as valid conditions of probation for persons convicted of crimes causing direct economic damage or loss to the public at large. *Taylor, Vaughn,* and *McMichael* simply require that any reparative

or restitutive sums ordered paid shall have been "legally determined" to reflect "actual damage or loss" caused by the offense. In this opinion we have held that neither may private charitable organizations be considered proper surrogates for the public at large as a party directly "aggrieved" by a criminal offense within the meaning of the statute. This does not foreclose all possibility that "actual damages" might be legally determined and a proper surrogate identified to act as direct conduit for restitutive payments to the affected public in an appropriate case. That case is not before us.

**654**

## IV

The sentences in both cases consolidated on this appeal are vacated; the cases are remanded for re-sentencing in light of this opinion. In re-sentencing, the court may not impose greater fines than $400,000 in No. 83–5125 (Wright) and $40,000 in No. 83–5179 (Mid-Atlantic).

VACATED AND REMANDED FOR RE-SENTENCING.