Richard L. CAMPBELL, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 34A048906CR235.

Court of Appeals of Indiana, Fourth District.

March 27, 1990.

James R. Fleming, Simmons & Fleming, Kokomo, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

CONOVER, Judge.

Defendant–Appellant Richard L. Campbell (Campbell) appeals the trial court's judgment sentencing him to three suspended sentences and two 5 year jail terms to run consecutively, together with fines totalling $50,000 or in the alternative a $40,000 non tax deductible contribution to Indiana University–Kokomo Foundation for stealing more than a quarter million dollars of the University's funds.

We affirm.

This appeal presents the following issues:

1. whether the trial court can order consecutive sentences when it finds no statutory aggravating circumstances;

2. whether the non-statutory aggravating circumstances found by the trial court can justify its consecutive sentencing;

3. whether probation as a condition of the suspended sentences can be ordered served after Campbell's jail terms have been served; and

4. whether the court could order a $50,000 fine, or in the alternative, a $40,000 contribution to Indiana University–Kokomo Foundation but forbid Campbell to take a charitable deduction on his income tax return.

From January, 1983, through December, 1987, Campbell was the Business Manager for Indiana University–Kokomo campus. In that capacity he had access to the Central Stores Department of Indiana University, Bloomington. During that period, he would pick up items such as trash bags, light bulbs, door stoppers, door locks, and materials of like nature. Out of these supplies he converted property valued at $5,884.52 to his personal use.

Campbell was also in charge of obtaining postage for the University. It created for him The $12,100 Richard L. Campbell Revolving Fund which was kept in cash in the Bursar's office safe to which Campbell had access. Furthering his scheme to steal the university's postal funds, Campbell obtained blank receipts from the U.S. Postal Service. Regularly, he would remove cash in sums ranging from $2,000 to $5,000 from his postal fund in the Bursar's safe, leaving a forged postal receipt supposedly signed by a post office employee in its place. Also, during that five year period Campbell falsified petty cash receipts to document other cash removed from the Bursar's safe. In all during that period, Campbell stole $257,908.52 from the University in this manner.

Campbell by way of information was charged with 162 counts of theft and forgery. After negotiations, the State and Campbell entered into a plea bargain which was accepted by the trial court. At the time of sentencing Campbell was 47 years old and married with three children and two grandchildren. He had been employed by Indiana University for 26 years, the last 22 serving as business manager for its Kokomo extension. Campbell was a civic leader in Kokomo having served variously as a member of the local alcoholic beverage commission, the athletic booster club, Babe Ruth League, Chamber of Commerce, city hall dedication committee, police department study committee, the county community hospital association, and as President of Rotary International, to name but a few of his leadership posts.

Campbell pled guilty to three counts of theft and two of forgery. One theft count charged a class D felony, the remaining counts all were charged as class C felonies. Theft counts numbered 163 and 164 to which he pled had been filed as part of the plea bargain. In mitigation at the sentencing hearing, the trial court found Campbell's civic and community reputation and work ethic to be outstanding. It further found he was a leader of the community, both as to the university and the City of Kokomo, he had no history of delinquent activity, and was unlikely to commit another crime. Finally, the trial court determined there were no statutorily aggravating circumstances as listed in IND. CODE 35–38–1–7(b)(1–7), but the trial court did find

1. Campbell's violation of a position of trust to the University;

2. his violation of a position of trust to the community;

3. the crimes involved multiple victims; and,

4. the crimes were committed in secrecy;

were aggravating circumstances warranting imposition of the consecutive sentences. (R. 397). The trial court also imposed a $10,000 fine on each of the five counts, terms of 2 and 5 years each on one count of theft and two counts of forgery, respectively, all suspended, but sentenced Campbell to the Indiana Department of Corrections for two 5 year prison terms on the plea bargained theft counts, to run consecutively. The balance of the trial court's sentencing order reads, in part, as follows:

The probation herein is granted as a result of the mitigating circumstances stated herein; the consecutive sentencing arises due to the aggravating circumstances as stated. The suspended sentences shall carry a term of probation of five (5) years to occur after release from incarceration. As a special condition of probation, the defendant is ordered to make total restitution to Indiana University in an amount to be determined by the Adult Probation Office of this court after all civil cases are concluded. Further, he is to serve five hundred (500) hours of community service while on probation. He will pay a Probation User's Fee of $50.00 and $15.00 per month while on probation. As to the fines, said fines totaling $50,000.00 will be suspended upon the condition that Mr. Campbell contribute $40,000.00 to the Indiana University–Kokomo Foundation. If the defendant chooses not to make said contribution to the Indiana University Foundation at Kokomo, the fines are ordered paid to the State of Indiana during the term of his probation. Further said contribution to Indiana University–Kokomo Foundation will not be used for tax deductions or in any other manner by which to reduce the defendant's tax liabilities nor shall such contribution be acknowledged by the Foundation in any form by memorial, scholarship, grant or dedication. The Court recommends the defendant be allowed to serve his sentence at a minimal correctional facility.

Defendant has no jail time credit. Commitment is ordered. Court enters judgment on said findings.

From this sentence, Campbell appeals.

■ Campbell first argues none of the trial court's four aggravating circumstances are found in I.C. 35–38–1–7(b)(1–7). Thus, the trial court abused its discretion by so doing Campbell opines, citing *Taylor v. State* (1982), Ind., 442 N.E.2d 1087, and *Brown v. State* (1986), Ind., 497 N.E.2d 1049, in support of his position. We disagree.

The factors listed in I.C. 35–38–1–7 are not exclusive. The trial court may, in its discretion, consider other relevant factors. *Ballard v. State* (1988), Ind., 531 N.E.2d 196, 198; *Brooks v. State* (1986), Ind., 497 N.E.2d 210, 220; *Mullens v. State* (1983), Ind., 456 N.E.2d 411, 414. *Brown* and *Taylor* are inapposite. In *Brown*, the trial court properly articulated an aggravating circumstance before enhancing the defendant's sentence. In *Taylor*, the trial court expressly found no aggravating circumstances, either statutory or non-statutory. Thus, neither case supports Campbell's argument. We further note I.C. 35–38–1–7 itself says

.     .     .     .     .

(d) The criteria listed in subsections (b) [aggravating circumstances] and (c) [mitigating circumstances] do not limit the matters that the court may consider in determining the sentence....

Thus, the trial court could consider aggravating factors not set forth in the statute in question as bearing upon the question of sentence enhancement, so long as they were relevant. *Ballard*, 531 N.E.2d at 197.

■ Next Campbell argues the mere fact his crimes involved a violation of trust placed in him by his employer, the University, cannot be used as an aggravating factor, citing *Linger v. State* (1987), Ind. App., 508 N.E.2d 56. In *Linger*, the court said the mere recitation by the trial court of an element of the crime without more to justify enhancement of sentence is improper. While that is the rule in *Linger*, that case also says

*Townsend [v. State* (1986), Ind., 498 N.E.2d 1198] also recognizes that the trial court may consider the particularized circumstances of the crime's factual elements, and the sentence may be enhanced if an element is particularly egregious ... [when] the trial court establishes, in its sentencing statement, reasons why the theft from an employer is any more grievous than theft from another and justifies imposition of an enhanced sentence[,] enhancement of sentence is proper. *Linger*, 508 N.E.2d at 65. Here, the trial court particularized this element and the others he set forth in his sentencing order by writing the following:

THE COURT NOW FINDS that many character witnesses of high standing within this community have testified for and on behalf of the defendant, Richard L. Campbell, and in their testimony have indicated the defendant's civic and community reputation and work ethic to be outstanding.

It appears to the Court that Mr. Campbell can be described in many different and flattering terms. It was shown to the court that Mr. Campbell had a charitable nature in that he worked for the good of many local causes, and further, that he was benevolent in the use of his money and time. In his personal life, he was bold and forward looking, capable of performing many and varied tasks. Thereby, it can be said, he was both enterprising and ambitious. These traits were enhanced by the aspect of creativity and cleverness that was demonstrated by Mr. Campbell. At his work at Indiana University–Kokomo, there is some mixed evidence describing him as demanding, vocal and visibly aggressive as well as charming, witty and friendly. These traits when combined with the fact that Mr. Campbell is an educated, intelligent and fluent businessman, who is dynamic and therefore powerful, leads one to the inescapable conclusion that he is dedicated to his cause and confident of his success.

All those adjectives can be deduced from the testimony and best describe the defendant as a leader of the community, both the university and the city, who was very capable and dedicated to succeeding.

Leaders, whether they be local, national or international, hold that position because they possess these traits and because the people trust them. Well respected leaders of the community who fail in carrying this trust, often make the loudest clamor when they fall. All the glowing statements as concerns Mr. Campbell create such a bright light of scrutiny that they illuminate his failures.

It can be said that Mr. Campbell, although bold, was uncontrolled either by self-discipline or by outside influence. He was ambitious for his personal gain and undisciplined in his view of his position. He was unfaithful as to his employer and more so to those people who looked to him as an example. Although his business [acumen] was great, he was overzealous in his ambitions; he was unjudicious as to his goals; he was immature and unrealistic. The road upon which he began his travels in pilfering the funds from Indiana University was methodically and shrewdly developed. He was opportunistic when the moment arose and moved forward as an untruthful and untrustworthy employee of Indiana University. In all, it can be said that for all of his qualities and virtues, the aspect of honesty was totally non-existent. For if this virtue was present, he would not have devised and continued this plan of deceit.

During sentencing hearing, defense counsel asked several of the State's witnesses whether or not their opinion as to the sentencing was based upon the statutory factor that "imposition of a reduced sentence or suspension of sentence and imposition of probation would depreciate the seriousness of the crime". The witnesses all testified it was a fair statement of their feelings. The court agreed, when it accepted the plea bargain, that the Court would make no findings of such as found in 35–38–1–7(b), 1 through 7, and therefore, the Court's

specific findings contained herein as to sentencing, do not contain such an aggravating circumstance. Further, the Court finds that it has not in any manner found any aggravating circumstances as listed in 35–38–1–7(b), 1 through 7.

THE COURT NOW FINDS as mitigating circumstances that 1. Richard L. Campbell has no history of delinquency or criminal activity prior to these incidences, and 2. That Richard L. Campbell is unlikely to commit another crime.

COURT NOW FINDS the following aggravating circumstances:

1. That the defendant, Richard L. Campbell, violated his position of trust within the University;

2. That Richard L. Campbell violated a position of trust and confidence that he had created within the local community;

3. That the crimes to which Richard Campbell has plead Guilty have a multitude of victims, (i.e. Indiana University, fellow administrators and teachers, taxpayers of the State of Indiana, the reputation of Indiana University, and last but not least, the students);

4. Further, the crime to which Richard Campbell has been found Guilty was committed in secrecy. That it was a plan to deceive others which involved the building by Richard Campbell of a pattern of trust within the University and community and was a continuing pattern of violation of that trust.

The trial court's particularization of the egregious nature of the crime against his employer is sufficient.

■ The trial court is only required to list one valid aggravating factor in order to support enhancement. *Duffitt v. State* (1988), Ind.App., 519 N.E.2d 216, affirmed on other grounds, (1988), Ind., 525 N.E.2d 607. However, because of the unique subject matter and its potential bearing upon future cases, we deem it advisable to address Campbell's other objections to the trial court's statement of aggravating circumstances.

■ Campbell next argues the trial court simply has not articulated why the violation of his "position of trust and confidence ... within the local community" and these crimes involving "a multitude of victims" constitute aggravating factors. Continuing, Campbell cogently asks "what is an aggravating factor" under the facts here presented? He reasons

It would seem that an aggravating circumstance logically, when the opposite is true, would be a mitigating circumstance. In other words, how can it be more aggravating that Campbell had been exemplary in his community in his activities and in his dedication to the community activities.... Is it mitigating that a person who has committed a crime would be a non-concerned, non-participating, non-caring member of society? Likewise [as to] multiple victims; why is this aggravating? The court has not given a clue in its sentencing order as to why this is aggravating.

(Appellant's Brief, p. 10). On the contrary, we believe the trial court fully articulated his reasons for assigning these categories as aggravating factors. Further, we believe they are proper aggravating factors warranting Campbell's consecutive sentencing.

First as noted above, I.C. 35–38–1–7(d) does not limit trial courts from considering other factors than those listed in sub-sections (b) and (c). By so stating, the legislature recognizes other factors warranting aggravation or mitigation of sentence may exist under the peculiar facts of other cases which are not listed in (b) and (c). Subsection (d) leaves to the sound discretion of the trial court the question of whether a particular crime's *dynamism* has an *overall effect upon the community as a whole* which warrants enhancement or diminution of sentence even though the factors listed in (b) or (c) may or may not be present. Trial judges are uniquely qualified to assess such dynamics. As a resident of the community he or she serves and in touch with its mores, the legislature recognizes no one is better situated to perform that function in such cases than the trial judge. In *Guenther v. State* (1986), Ind., 501 N.E.2d 1071, Justice Pivarnik said

It is proper for a trial court to consider both the *manner of the commission* of a crime and *the nature of it* in determining whether or not a crime could be considered heinous and merits aggravation of the presumptive sentence. (Emphasis supplied.)

*Id.* at 1073.

The continuing crime here was not just another "smash and grab" theft by an indigent on drugs. It involved a five year insidious theft of over a quarter of a million dollars from a venerated community employer. The trial judge meticulously explained the exacerbated nature of this case in his sentencing order. These crimes were perpetrated as part of a cold and calculated criminal scheme formulated by a pillar of the Kokomo community. These crimes are all the more heinous because its perpetrator by his external social conduct chose to set an example for others to follow, including present and future Indiana University–Kokomo students whose hard-earned funds he was in effect pilfering, the members of his Cub Scout troop, his Little League team and uncounted others who were or may have been influenced by his leadership and conduct in the community. While under the black-letter criminal law applicable to this case, Campbell's crimes may appear to be only on a par with those committed by pickpockets, the trial judge tells us in his order the social damage done by these thefts to the Kokomo community was enormous, and clearly warranted the imposition of consecutive sentences. The trial judge did not abuse his discretion by assessing these peripheral matters in aggravation of the basic crimes here involved. These crimes clearly were egregious under the facts and their effects upon the community relevant.

■ Next, we agree with Campbell's argument because substantially all crimes involving theft and forgery are committed in secret, such category cannot be relied upon as an aggravating circumstance since secrecy is a common element in all similar crimes. We treat that entry in the trial judge's sentencing order as surplusage.

■ Campbell next argues the trial court's requirement he is to be on probation after serving his prison terms is prohibited by I.C. 35–50–2–2(c). It provides

Whenever the court suspends a sentence for a felony, it shall place the person on probation under IC 35–38–2 for a fixed period to end not later than the date the suspended sentence expires.

The trial judge's sentencing order does precisely that. Under the sentencing order, the suspended sentences are to run concurrently with each other but consecutively to those requiring his incarceration. Probation is a matter addressed to the sound discretion of the trial judge, and may be granted as a substitute for incarceration. It is merely a sentencing tool available to trial judges to use when and as they wish. *Stroud v. State* (1988), Ind., 517 N.E.2d 780, 782. We find no error here.

■ Finally, Campbell argues the trial court cannot deny Campbell a charitable deduction on his Federal income tax return if he chooses to make the $40,000 contribution to Indiana University Foundation–Kokomo as the alternative to paying the fines imposed upon him. This requirement was one of the trial court's conditions for suspending the fines imposed. The trial court did not abuse its discretion in this regard because it was not required to suspend the fines in the first instance. It may impose any reasonable condition it deems appropriate when it does so. The questioned condition here is reasonable under the circumstances.

In sum, we find no error and treat the aggravating factor of secrecy as surplusage.

Affirmed.

CHEZEM, P.J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

I.

I agree that in considering aggravating circumstances, the court is not restricted to those specific factors set forth in I.C. 35–

38-1-7(b). *Ballard v. State* (1988) Ind., 531 N.E.2d 196. I do not agree, however, that here the factors recited by the court as aggravating circumstances, or any one of them, permits imposition of consecutive sentences.

The majority opinion appropriately observes that the trial court erred in holding the secret nature of the crime to be an aggravating circumstance. Such secrecy, as noted, "is a common element in all similar crimes." P. 1169. Similarly, in my view, the fact that Campbell violated the trust of the University is the very essence of the acts of theft and forgery themselves. That violation of trust may not be considered, in addition, as an aggravating circumstance. *Linger v. State* (1987) 4th Dist. Ind.App., 508 N.E.2d 56.

The trial court further erred in translating the inferred moral outrage or sense of disappointment within the geographical and academic communities into a conclusion that these groups were actual victims of the criminal offenses. Such is tantamount to stating that every crime committed should carry an enhanced sentence because all society is the victim of crime.

For the same general reasons I disagree that violation of the trust and confidence of the community constitutes an aggravating circumstance. *See Fointno v. State* (1986) Ind., 487 N.E.2d 140; *Cunningham v. State* (1984) 4th Dist. Ind.App., 469 N.E.2d 1 (Young, J. concurring), *trans. denied.*

Accordingly I would direct the trial court to order the executed sentences be served concurrently.

### II.

The sentencing order does not, as stated by the majority, provide that "the suspended sentences are to run concurrently with each other but consecutively to those requiring his incarceration." Slip opinion, p. 12. Such may be a reasonable attempt to reconstruct the judgment in order to accomplish a goal of having a five year period of probation begin after termination of the executed sentences. But we are not vested with authority to order consecutive sentences when the trial court has not done so. Here, the only provision for consecutive sentences is in that portion of the decree which states:

> "The sentence as to Count 164 is ordered committed and to be served consecutive to Count 163." Record at 398.

Other than as expressly provided by statute, a court may not order sentences to be served consecutively. *Kendrick v. State* (1988) Ind., 529 N.E.2d 1311. It is clear, therefore, that the sentences upon Counts 1, 3 and 31, although suspended, commenced upon the same date as did the executed sentences upon the other two counts. *Stuck v. State* (1972) 259 Ind. 291, 286 N.E.2d 652; *Williams v. State* (1986) 2d Dist. Ind.App., 498 N.E.2d 1332, *trans. denied.* Accordingly, as provided by I.C. 35-50-2-2(c) (West's 1989 Supp.) the terms of probation in connection with the suspended sentences could end "not later than the date the suspended sentence[s] expire[d]." The attempt by the trial court to have a five year period of probation begin upon Campbell's release from incarceration is without effect. *See Slayton v. State* (1989) 2d Dist. Ind.App., 534 N.E.2d 1130; *Willis v. State* (1986) 1st Dist. Ind.App., 498 N.E.2d 1029; *McVey v. State* (1982) 2d Dist. Ind.App., 438 N.E.2d 770.

### III.

The final area of my disagreement with the majority decision concerns the matter of the trial court's provision for an alternative to the five $10,000 fines, i.e., the making of a $40,000 contribution to the University. Although Campbell couches his argument in terms of the trial court's disallowance of a federal income tax deduction in the event of such contribution,[1] I discern more basic defects in the order.

The order which provides for a $40,000 "contribution" to the University may not

---

**1.** Campbell's argument would seem to have merit, at least to the extent that the legality of federal income tax deductions is a matter of Federal Law. *See In re Marriage of Davidson* (1989) 1st Dist. Ind.App., 540 N.E.2d 641; *but see In re Marriage of Baker* (1990) 1st Dist. Ind.App., 550 N.E.2d 82.

be considered an equivalent to an order for partial restitution. The judgment required Campbell to make "total restitution ... after all civil cases are concluded." Record at 398. It is well established that an order of restitution may not exceed the amount of the loss caused by the criminal act. *Hipskind v. State* (1988) 3d Dist. Ind.App., 519 N.E.2d 572, *trans. denied.* In light of the order for "total restitution," the requirement of an additional $40,000 payment, even as an alternative to a fine, exceeds the loss sustained by the University.[2]

More serious than the technical deficiencies of the contribution alternative is, I believe, the likelihood of abuse inherent in such arrangements. At the outset, it would appear that a charitable contribution is not within the contemplation of I.C. 35-38-2-2(a)(14) (West's 1989 Supp.) which, with regard to probation, permits the court to order satisfaction of "other conditions reasonably related to the person's rehabilitation." Furthermore, as earlier noted, it cannot be justified as the equivalent of restitution. In the context of the judgment here involved it is quite simply a substitute for a punitive fine. Such diversion of funds was criticized in *United States v. Missouri Valley Construction Co.* (1984 C.A. 8th Cir.) 741 F.2d 1542, 1549–1550:

> "We note also that the effect of the monetary-payment conditions of probation in this case is to transfer to a private entity designated by the district court a substantial sum of money that would otherwise likely have gone, in the form of a fine, into the federal treasury."

To the same effect is *United States v. John A. Beck Co.* (1985 C.A. 6th Cir.) 770 F.2d 83.

In a case factually similar to *Missouri Valley Construction Co., supra,* involving highway contract bid-rigging, the trial court in *United States v. Wright Contracting Co.* (1984 C.A. 4th Cir.) 728 F.2d 648, suspended all but $50,000 of a $400,000 fine upon condition that the defendant contribute $175,000 to a city sponsored jobs program. It was the stated purpose of the trial judge to "put back into the immediate local community some of the illegal gains" achieved by the defendant from that community. 728 F.2d at 650. In striking down the order, the Court of Appeals held:

> "Creative sentencing of the kind here undertaken, for example, necessarily involves the court in selecting particular third persons to become beneficiaries of the probationer's assets—presumably acting in some way as 'surrogates' for the public as the actually 'aggrieved party.' Such selections of course carry financial benefits for which there may be quite legitimate rival claimants among potential 'surrogates,' whether known or unknown to the court. Where the sums imposed for payment are also fixed by the court without reference to any measurable losses or damage, the court exposes itself to possibly justifiable and unanswerable criticisms both in respect of the particular beneficiaries selected and the specific sums awarded them. The danger thereby created, without compensating benefit, for unnecessary involvement of the criminal justice system in peripheral controversy is obvious." 728 F.2d at 653.

Closer to home and from a perspective of judicial ethics is an Advisory Opinion of the Indiana Commission on Judicial Qualifications (December 16, 1986).

In disapproving a plea agreement which would require a defendant to contribute to a county "Victim Fund" the Commission stated:

> "This is not dissimilar to the practice examined by the Supreme Court of Missouri in a case involving contributions by criminal defendants to a "Library Fund." *In re Storie,* 574 S.W.2d 369 (Mo.1978). The Court concluded that even though there was no evil intent on the part of

---

**2.** The restitution order may well be deficient in another respect. It leaves the actual amount to be paid uncertain and dependent upon future events. As a condition of probation it is therefore not sufficiently specific. *See Harder v. State* (1986) 4th Dist. Ind.App., 501 N.E.2d 1117; *Walker v. State* (1984) 3d Dist. Ind.App., 467 N.E.2d 1248.

**1172**

the judge, "the practical effect to the public is that of a 'pay-off'.

\*   \*   \*   \*   \*   \*

The members of the commission are of the opinion that the above described victim fund program does suggest decisional favor predicated on financial contribution. Accordingly, the Commission is of the further opinion that a judge would violate Canon 2 of the *Code of Judicial Conduct* by permitting plea agreements of this nature." [3]

For all of the foregoing reasons, I would reverse and remand for resentencing.

---

**3.** *Cf., United States v. Posner* (S.D.Fla.1988) 694 F.Supp. 881. There, the maximum fine had been imposed upon defendant for tax fraud involving overevaluation of charitable contributions. In addition, the court ordered community services of twenty hours per week for five years. Defendant was directed to formulate and implement a plan for alleviating the homeless problem in south Florida. The defendant voluntarily made a substantial monetary contribution which was incorporated into the probation order and which was held to be merely incidental to the underlying rehabilitative and community service aspects of the probation. The terms and conditions of probation were held permissible and within the scope of the U.S. Probation Act.