Thomas F. **MARSHALL,** Appellant–
Defendant Below,

v.

**STATE** of Indiana, Appellee–
Plaintiff Below.

No. 27A02–9404–CR–211.

Court of Appeals of Indiana,
First District.

Dec. 8, 1994.

Transfer Denied Jan. 1, 1995.

**958**

P. Robert Dawalt, Jr., Marion, for appellant.

Pamela Carter, Atty. Gen., Jodi Kathryn Rowe, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

ROBERTSON, Judge.

Thomas F. Marshall appeals his conviction of child molesting, a class D felony for which he received a sentence of one and one-half years. Marshall raises the following allegations of error:

I. The trial court committed error in admitting testimony of a prior consistent statement by the alleged victim in a child molesting case.

II. The trial court committed error in failing to grant Marshall's Motion to Correct Error and to order a new trial when it was determined that the State had failed to turn over an exculpatory statement which corresponded with and supported Marshall's defense to allegations of child molestation.

III. The trial court erred in failing to grant Marshall's Motion to Dismiss at the close of the State's case.

IV. The trial court committed error in overruling Marshall's objection to a final instruction which overemphasized that a conviction could be had on the evidence of only one witness.

V. There was insufficient admissible evidence to support the conviction.

VI. The trial court abused its sentencing discretion in failing to grant Marshall a suspended sentence and probation.

We affirm.

The evidence reveals that Marshall was a deputy marshall for the town of Fairmount. He and his family lived a few lots away from the victim and her family in a mobile home park. The victim was a fourteen-year-old girl who occasionally watched Marshall's children. She liked Marshall and thought she could trust him. She felt he cared about her. She eventually confided in him that she had been using marijuana and alcohol. She thought he would help her quit using these substances. She and Marshall then told her mother, and the three arranged to have Marshall counsel the victim about drugs and alcohol as he had for other juveniles.

Early in the 1992 school year, the victim went to Marshall's home for counseling. She and Marshall were the only ones present. Marshall sat in the rocking chair by the couch and told the victim to come over and sit on the sofa. She did so, and sat on the end closest to Marshall. As she sat there with her legs crossed, Marshall told her she did not have to sit like that and uncrossed her legs. He also told her she did not have to sit with her legs so close together and pushed her legs a little further apart. The victim was wearing a knee-length skirt at the time. Marshall then grabbed her ankle and moved her leg while he asked her where her ankle bracelets were. At the same time, Marshall was looking at her skirt.

Marshall asked the victim to do the splits. She tried, but she could not and returned to the couch. Marshall then told the victim to sit on his lap. She did so but did not feel comfortable about it. She sat there for three

or four minutes as Marshall began to rock the chair, moving up and down. As he did so, she felt his penis rub against her tail bone through his sweat pants. At times, his hands were around her waist. The victim was scared, so she got up and went back to the couch.

Marshall then asked the victim to do the splits again; and, as she did so, Marshall lay underneath her and looked up her skirt. He then told her that her panties were crooked and fixed them by placing his fingers inside the elastic part and running his fingers from the front to the back. As he did so, the backs of his hands touched the insides of her thighs. Marshall returned to the rocking chair, and the victim went back to the couch.

Marshall again told the victim to come back over and sit on his lap, and she did so. He then rocked, moving up and down, in the same manner as before. Marshall told her to stand up for a minute, and she complied. When she turned around, she saw that Marshall had his exposed, erect penis in his hand. Marshall told her to sit back down on his lap, and she did so. Marshall pulled her skirt out so her skin or panties were against his lap. She could feel his penis touching her panties and her vagina. Marshall asked the victim if she could get a hold of it. He then put her hand underneath his penis, so she could feel it in her hand. Marshall continued to rock in the chair, and his penis was moving against her hand. Marshall asked her if she liked it, but she did not respond.

The victim then saw a police car approach and heard a car door shut. Officer Dave Nelson had come to visit his fellow officer, and Marshall let him in. The complainant's boyfriend then arrived and told her she was to return home. When the victim saw Marshall the next day, he said he would appreciate it if she did not tell anyone what had happened, that it would be their little secret.

I

The victim told her friend Cassie Curtis about the incident a few weeks later. Marshall claims the trial court erroneously allowed Cassie to testify about what the victim had told her because it amounted to a prior consistent statement which was hearsay.

The State counters that the statement is not hearsay because it complies with the decision in *Modesitt v. State* (1991), Ind., 578 N.E.2d 649:

> In balance, we hold that, from this point forward, a prior statement is admissible as substantive evidence only if the declarant testifies at trial and is subject to cross examination concerning the statement, and the statement is ... (b) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive ...

*Id.* at 653–654 (with guidance from Federal Rule 801(d)(1)). This rule was in effect during Marshall's trial.

■■■ The parties contest whether the prior consistent statement must have been made before a motive to fabricate arose. The bulk of federal caselaw on the federal rule and the language of recently adopted Ind.Evidence Rule 801(d)(1)(B) establish such a requirement. The State contends that the rule explicitly articulated in *Modesitt* does not. Our supreme court has decided that the requirement exists. *See Evans v. State* (Ind.1994), 643 N.E.2d 877. The requirement was satisfied in the present case.

The victim testified at trial about having told Cassie of the incident with Marshall. Later, in his own testimony, Marshall claimed the victim had had several motives to fabricate her story. One of the motives was lucre: "somebody stated to her that she could get money out of this" (R.432, 434). Marshall presented evidence to support this contention. A neighbor of the victim acknowledged that she had talked with the victim "about this Tom Marshall incident" (R.348). When asked whether Marshall had been messing with her, the victim had said, "that he hadn't done anything with her yet, that—she said if he did she would own him" (R.349). The neighbor's husband corroborated the statement, in that the victim had said that "her mother had told her if she would press charges against Tom over the incident that was said that she could own him" (R.355).

As noted, Marshall raised an objection to the prior consistent statement because it was allegedly hearsay. He therefore had the burden to establish that the statement was hearsay. To do just that, Marshall raised the issue of a motive to fabricate. He correspondingly had the burden to show the prior consistent statement occurred after the motive to fabricate arose. He did not do so.

The statements of the victim "about the Tom Marshall incident" with regard to whether "she would press charges against Tom over the incident" to "own him" occurred after the incident had been made public. By that time, the victim's mother and her neighbors knew about the "incident." Cassie, however, was the first person the victim had told about the incident (R.229). The evidence supports the conclusion that the victim's statements to Cassie occurred before the incident had been made public. Thus, evidence also supports the conclusion that the victim had uttered her consistent statement to Cassie before she allegedly had the motive to fabricate her testimony for undeserved profit.

Marshall also claims that admission of the consistent statement was erroneous because the victim, as the declarant, was not subject to cross-examination concerning the statement. The record reveals that, during the State's case-in-chief, the victim testified she had told Cassie "about this" but did not include any specifics. Marshall did not explore the statements to Cassie on cross-examination with the victim but pursued a line of questioning about the recent fabrication of her story. Later, Cassie was about to relate the victim's prior statement when Marshall objected to the evidence as hearsay. The State urged admission of the statement because "the defense has raised an issue of motive in this case" (R.306). The trial court overruled the objection on the basis of the rule stated above (R.307). Cassie then related the prior statement, which was consistent with the victim's direct testimony. Neither Marshall nor the State recalled the victim to testify about the prior consistent statement.

Under the circumstances, the following is dispositive of Marshall's claim:

Appellant argues that the evidence fails the first requirement of this Rule and was thus inadmissible because the declarant (Pacheco) was not cross-examined about these statements. While it is true that the declarant must be *available* for cross-examination regarding this type of statement, [citation omitted], there is no indication in the record that the defense was precluded from recalling Pacheco for re-cross or from exploring the content of the statements and the circumstances under which they were made. Therefore we find that the declarant was available for cross-examination and thus the alleged omission, if any, can only be attributed to appellant. *United States v. Piva* (1st Cir.1989), 870 F.2d 753, 758.

The record shows that the State not only elicited the victim's version of the incident but established the existence of a prior consistent statement about it. Marshall then pursued an express or implied charge of recent fabrication against the victim in an attempt to impeach her credibility. In a responsive attempt to rebut the charge and to rehabilitate her credibility, the State elicited the victim's prior consistent statement which had been made before the alleged motive had arisen to fabricate her testimony in the pursuit of ill-gotten gain.

The testimony was not contrary to the rule established in Modesitt, and the trial court committed no error when it admitted the statement to rebut the charge of recent fabrication. The record does not show that Marshall was precluded from recalling the victim for re-cross or from exploring the content of her statement to Cassie and the circumstances under which it had been made. Therefore the victim, as the declarant, was available for cross-examination on the prior statement and her alleged absence for that purpose can only be attributed to Marshall.

II

During discovery, the State did not disclose the existence of a statement from the victim's boyfriend. Marshall claims the nondisclosure was error because the statement was exculpatory. He also contends the trial court should have granted him a new trial.

During his investigation of the incident, an Indiana State Police officer had interviewed the victim's boyfriend and had preserved the interview on audio tape. During the interview, the boyfriend arguably indicated that no police officer had been present when he went to Marshall's mobile home. The tape was not transcribed because 1) the boyfriend had just come from the dentist and was under medication at the time of the interview; 2) the boyfriend had started to talk seriously about his psychic ability when asked what he knew about the incident in question; 3) the boyfriend had acknowledged that what he had to say about the incident was "more of a gut feeling;" and 4) within three weeks of the interview, the boyfriend had been released from his second in-patient institutionalization' that summer at a drug rehabilitation center. The Indiana State Police officer had not provided the tape during discovery, but he testified that this was an oversight on his part.

The record shows the victim testified before the grand jury that Officer Nelson had left Marshall's home before some of the events occurred. By the time of trial, she had changed her story because she had remembered that her boyfriend had arrived while Officer Nelson had been present. Officer Nelson testified that he did not remember the victim's boyfriend ever having been present when he and the victim had been present in Marshall's home; however, he acknowledged it was possible that the boyfriend had been present on such an occasion. Marshall testified that the victim's boyfriend had never been at his home when Officer Nelson had been present.

■ A trial court's determination about whether tendered discovery constitutes substantial compliance with its discovery orders is reviewed deferentially and may be reversed only on a showing of clear error. *Green v. State* (1991), Ind.App., 575 N.E.2d 296, 301, *trans. denied.* A constitutional violation of a discovery order occurs only if the nondisclosure deprives a defendant of a fair trial. *Gibson v. State* (1987), Ind.App., 514 N.E.2d 318, 320 (citing *United States v. Bagley* (1985), 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481). A constitutional error occurs,

and a conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial. *Id.*

■ Marshall claims the statement of the victim's boyfriend would have bolstered his defense because it was consistent with the trial testimony of Officer Nelson and Marshall himself and with the grand jury testimony of the victim. All of these statements indicate that the boyfriend had not been present at the mobile home with the victim, Marshall, and Officer Nelson. During the trial, however, the victim indicated that all four had been present at one point. The boyfriend's statements would have been inconsistent with the victim's trial testimony, and Marshall would have used the boyfriend's statements for impeachment purposes.

The importance of impeachment evidence depends on the facts of the particular case. *Gibson,* 514 N.E.2d at 321. The importance of impeachment evidence will depend upon the type of impeachment evidence it is, the extent of its impeachment, and the importance of the impeached witnesses to the State's case. *Id.* (quoting *Deatrick v. State* (1979), 181 Ind.App. 469, 392 N.E.2d 498).

The victim's testimony was vital to the State's case. The trial pitted her word against Marshall's word. Her credibility was the keystone of her testimony. The breakdown in discovery, however, in which the State did not disclose the existence of the audio tape of the interview with the boyfriend, did not undermine confidence in the outcome of the trial and therefore did not deprive Marshall of a fair trial. Marshall sought to use the boyfriend's statement as one more bit of evidence to show the victim's testimony was incredible. The impeachment value of the victim's own inconsistency between her grand jury testimony and her trial testimony, however, was much more powerful than that of the boyfriend's statement. Also, the value of his statement was diminished because the victim was otherwise impeached on this point with the testimony of Marshall and Officer Nelson. Moreover, the extent of the impeachment was slight, as it served only

to impeach the victim's general veracity and did not refute any element of the offense.

Further, during the interview, the Indiana State Police officer had asked the boyfriend if he had ever gone to Marshall's mobile home "to see [the victim] and maybe [the victim] had told you that maybe another police officer had stopped by earlier that day?" The answer had been no. The trial court could reasonably have interpreted the boyfriend's answer to mean that the victim had never told the boyfriend that another police officer had stopped by earlier that day, as opposed to Marshall's view that the boyfriend meant that no officer had been present when the boyfriend had been present. The inconsistency between the boyfriend's statement and the victim's testimony would not have provided Marshall much ammunition to attack her credibility. Any error was not of constitutional dimension.

Finally, the trial court could have considered that the boyfriend's statement acquired its exculpatory value only after the victim had testified at trial because only then did any inconsistency appear in their statements. In light of this, the trial court's denial of Marshall's motion to correct error was appropriate; Marshall has not shown clear error in the determination that the State substantially complied with the trial court's discovery orders.

## III

Marshall moved to dismiss the charge after the State had presented its case-in-chief. He claimed the State had failed to prove all the elements of the offense in question, specifically that it had failed to prove Marshall was over sixteen years of age. This issue will be addressed below with the issue of sufficiency of the evidence.

## IV

■ Marshall claims the trial court erroneously instructed the jury as follows:

### INSTRUCTION NUMBER 9

If you are convinced of the Defendant's guilt beyond a reasonable doubt, you may find him guilty of the crimes charged even though your conviction is based solely on the testimony of a single witness.

### INSTRUCTION NUMBER 11

You are the exclusive judges of the evidence, the credibility of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his or her ability and the opportunity to observe; the manner and conduct of the witness while testifying; any interest, bias or prejudice the witness may have; and any relationship with other witnesses or interested parties; and the reasonableness of the testimony of the witness considered in the light of all of the evidence in this case.

You should attempt to fit the evidence to the presumption that the defendant is innocent and the theory that every witness is telling the truth. You should not disregard the testimony of any witness without a reason and without careful consideration. If you find conflicting testimony you must determine which of the witnesses you will believe and which of them you will disbelieve.

In weighing the testimony to determine what or whom you will believe, you should use your own knowledge, experience and common sense gained from day to day living. The number of witnesses who testify to a particular fact, or the quantity of evidence on a particular point need not control your determination of the truth. You should give the greatest weight to that evidence which convinces you most strongly of its truthfulness.

Marshall claims the two instructions unduly emphasize that a conviction may be had on the evidence of only one witness.

Marshall expresses fear the instructions inform the jury that the trial judge is vouching for the victim, upon whose testimony the conviction may turn. The explicit language of INSTRUCTION 11 resolves any such appearance. The trial court is allowed wide discretion in determining whether the repetition in the instructions constitutes undue influence. *Holifield v. State* (1991), Ind., 572 N.E.2d 490, 496. The trial court abused no discretion.

## V

■ Marshall claims the victim's testimony was so tainted by inconsistencies and unexplained variance with prior versions of her story that her testimony was not reliable. This claim is merely an invitation to reweigh the evidence and to judge the victim's credibility.

The victim explained the inconsistencies in her statements, and the trial court committed no error when it admitted her prior consistent statement. These items of evidence do not cast doubt on the jury's verdict.

Finally, Marshall claims the evidence is insufficient to support the determination that he was over sixteen years of age at the time of the offense. The evidence most favorable to the verdict shows that Marshall was a deputy marshall for the town of Fairmount, was married, had two children over the age of six, and had attended high school several years earlier. The evidence is sufficient to support the conclusion that Marshall was over sixteen years of age at the time of the offense.

## VI

■ Marshall contends this case contains no aggravating circumstances which would have precluded the trial court from granting him probation and a suspended sentence. As the trial court noted, however, Marshall had been a police officer who had counseled the victim about drugs and alcohol use. He had been in a position of trust with the victim and members of the community. The victim testified that she, in fact, had trusted him and could not understand why he would have betrayed their relationship. Marshall breached the trust the victim and the community had placed in him, and such a breach is a valid aggravating factor. *See Campbell v. State* (1990), Ind.App., 551 N.E.2d 1164.

The trial court identified one mitigating factor, that Marshall had demonstrated an admirable, law-abiding life prior to the offense. The violation of trust sufficiently balanced this lone mitigating circumstance for the court to have imposed the presumptive sentence.

Judgment affirmed.

RUCKER and KIRSCH, JJ., concur.